AZZIE MERKEL, Respondent, v. RAILWAY MAIL ASSOCIATION, a Corporation, Appellant.

St. Louis Court of Appeals.   Opinion Filed November 3, 1920.

1. **INSURANCE: Accident Insurance: Death From External Violence: Question for the Jury.** In an action to recover under the terms of an insurance policy, it having been shown by competent testimony that the death of deceased was due to general peritonitis. and further testimony that general peritonitis may result from external violence it was then within the province of the jury to draw the inference that the general peritonitis was in point of fact caused by external violence.

2. **EVIDENCE: Inferences: An Inference Cannot be Drawn From Another.** A verdict cannot be predicated upon an inference drawn from another inference; that is, piling inference upon inference.

3. **INSURANCE: Accident Insurance: Death: Presumption Against Self Inflicted Injury.** Though the jury could infer that the deceased came to his death from general peritonitis caused by an external blow, and absent any testimony whatsoever on the subject that the external blow which caused the peritonitis was accidental and not self-inflicted, the missing link is supplied by a presumption of law, to-wit, that the insured did not voluntarily inflict an injury upon himself.

4. **EVIDENCE: Presumption: Inference: Distinguished.** The word "presumption" in the strict legal sense should be applied only to

a presumption of law, and as such may be defined as the deduction which the law expressly directs to be made from particular facts, whereas "inference" as distinguished from presumption of law is a deduction which may be made from any facts legally proved; the difference is that a presumption is a mandatory deduction while an inference is a permissible deduction which the reason of the jury makes without an express instruction of law to that effect.

5. **INSURANCE: Accident Insurance: Verdict for Beneficiary: Not Based Upon Inference on Inference.** *Held*, that under the evidence, the jury, predicating their finding upon competent testimony as to the facts and circumstances in the case and the inference which they could properly draw from such testimony, and taking into consideration the presumption of law that the insured did not voluntarily inflict an injury upon himself, could arrive at a verdict favorable to plaintiff without predicating an inference upon an inference.

6. **WITNESSES: Expert Witness: Testimony Invading Province of Jury: Improper.** In an action to recover under the terms of an insurance policy where one of the issues in the case was whether general peritonitis with which, according to the physician who testified for plaintiff deceased suffered, and was the cause of his death, was caused by external violence, it was improper to permit a medical expert, over proper objection, to testify that the general peritonitis was due to an injury, thus permitting such witness to substitute his reasoning and conclusions for the reasoning and conclusions of the jury upon an issue before the triers of fact.

7. **INSURANCE: Accident Insurance: Vexatious Refusal to Pay: Substantial Evidence: Question for the Jury.** Under section 7068, Revised Statutes 1909, the question of whether or not an insurance company had vexatiously refused to pay the loss is for the jury, if there is any substantial testimony upon which such finding may be based, and is a matter to be determined by the jury from all the facts and circumstances in the case, and it is not necessary that affirmative proof of vexatious delay be offered.

8. ———: ———: ———: **Evidence Insufficient.** Where the attending physician who was plaintiff's witness in the case, stated that in the death certificate made out by him at the time of the death of deceased he gave appendicitis as the cause of death, and was in a position to know more about the proximate cause of the death of deceased than any one else, *held* an insurer in an accident policy had a right to rely upon such statements, and had a legitimate and proper right to defend against an action to re-

cover the amount named in the policy, and the court erred in submitting the question of vexatious delay to the jury, under section 7068, Revised Statutes 1909, although such attending physician testified that death resulted from general peritonitis caused by external violence.

9. ———: ———: ———: **Must Be Willful and Without Reasonable Cause: Substantial Evidence Required.** In order to entitle the beneficiary in an insurance policy to recover damages from the insurer for vexatious refusal to pay, under section 7068, Revised Statutes 1909, there must be some substantial evidence tending to show that such refusal was willful and without reasonable cause.

Appeal from the Circuit Court of the City of St. Louis. —*Hon. Wilson A. Taylor*, Judge.

REVERSED AND REMANDED.

*E. P. Wilson* and *Brownrigg, Mason & Altman* for appellant.

(1) The court erred in overruling the defendant's demurrer to the evidence, because, there was no evidence that the insured came to his death from bodily injuries through external, violent and accidental means. (2) There being no direct evidence of external violence, the court erred in allowing the jury to infer from evidence showing that there was a black and blue mark on the insured's abdomen that such black and blue mark was due to a blow, and to further infer that that blow was accidental, and to further infer that the abdominal peritonitis found to exist upon opening the insured's abdomen was due to the same cause which made the black and blue mark, that is, to an alleged accidental blow. A case cannot be made out by piling inference upon inference and presumption upon presumption. Wright v. United Commercial Travelers, 188 Mo. App. 457, 464; Hamilton v. Kansas City Southern Ry. Co., 250 Mo. 714; Glick v. Kansas City, etc. Co., 57 Mo. App. 97; U. S. v. Ross, 92 U. S. 281; Kiefer v. Ins. Co., 201 Pa. 448; Whitesides v. Railroad 186 Mo. App. 621; Freeman

v. Loyal, etc., Ass'n, 195 S. W. 545; Jones on Evidence, sec. 104.   (3) The only testimony that the insured's death was not due to appendicitis and was due to a blow, was the testimony of the plaintiff's expert witness, Dr. Hertal, which was a mere conclusion based upon no proven facts in the case.  The testimony of the said witnesses was so inconsistent within itself and with the physical facts testified to by him that his said conclusion does not amount to substantial, credible evidence supporting the verdict.  The court, therefore, erred in submitting the cause to the jury upon such testimony, and this court should reverse the judgment.  Brockman Commission Co. v. Aaron, 145 Mo. App. 307, 316; Wright v. Kansas City, 187 Mo. 678; Berry v. Street Ry. Co., 156 Mo. App. 560, 562; Spain v. Ry., 190 S. W. 360.   (4) The evidence, introduced by the plaintiff herself was so overwhelmingly in favor of the defendant as to show that the verdict was clearly the result of passion and prejudice, and the trial court erred in failing to set aside the verdict upon that ground, and this court should not permit the verdict to stand. Lehnick v. Metropolitan, etc., Ry., 118 Mo. App. 611; Price v. Evans, 49 Mo. 396; Joy v. Cole, 124 Mo. App. 569.   (5) There is not a scintilla of evidence that the defense was made in bad faith or for any vexatious delay, and the court erred in, in instruction No. 2, submitting to the jury the question of vexatious delay, and in overruling the assignment in defendant's motion for new trial that there was no evidence to justify the jury in finding such damages.  Keller v. Insurance Co., 198 Mo. 440, 460, 461; Patterson v. Insurance Co., 174 Mo. App. 37, 44; Non-Royalty Shoe Co. v. Phoenix Assurance Co., 210 S. W. 37, 43; Fay v. Etna Life Ins. Co., 187 S. W. 861.   (6) The fact that the jury allowed eight hundred dollars for vexatious delay, in view of the further fact that the defense appeared to be in perfect good faith, shows passion and prejudice on the part of the jury against the defendant, and for that reason the court erred in overruling defendant's motion for new trial, and this court should not allow the ver-

dict to stand. (7) The court erred in repeatedly allowing plaintiff's expert witnesses to testify that the insured's death and the abdominal peritonitis which was found in his abdomen were due to a blow when that was the very issue before the jury, and defendant objected to such testimony as invading the province of the jury. Castanie v. United Rys. Co., 249 Mo. 192, 195; Henson v. Kansas City, 210 S. W. 13; Deiner v. Sutermeister, 266 Mo. 505; Glasgow v. Railroad, 191 Mo. 365. (8) There was a material variance between the contract pleaded in the petition and the contract proven in that the contract pleaded was a contract to pay four thousand dollars in the event of death through external, violent and accidental means but the contract proven and submitted to the jury in instruction number 1 was to pay said sum in the event of death due to injuries other than appendicitis through external, violent and accidental means. On account of this material variance the court erred in overruling the demurrer to the evidence. (9) The court erred in giving to the jury instruction No. 1, in that instruction No. 1 broadened the issues, both under pleading and evidence. The court further erred in giving said instruction in that said instruction does not confine the jury to the issues made by the pleadings, because the instruction submits the question as to whether or not the insured received bodily injuries other than appendicitis through external, violent and accidental means, and the petition contains no allegation that he received bodily injuries other than appendicitis through such means, but merely alleges that he received bodily injuries through external, violent and accidental means. Scrivner v. Missouri Pacific Ry. Co., 260 Mo. 421; Silverthorne v. Summit Lumber Co., 190 Mo. App. 716.

*Edward W. Foristel* and *James J. O'Donohoe* for respondent.

BECKER, J.—This is an action brought by plaintiff against defendant in the circuit court of the city

of St. Louis, to recover under the terms of an insurance policy issued to her husband, Henry J. Merkel.

The trial resulted in a judgment for the plaintiff, for a total sum of $4,938—$800 of this amount being for damages and attorney's fees.

It appears that the plaintiff, Azzie Merkel, was the widow of the deceased, Henry J. Merkel, who, preceding his death, was a railway mail clerk in the service of the government; that on June 15, 1916, he was in perfect health and left the city on that date about three o'clock in the course of his employment; that he traveled between St. Louis and Nashville; that when he returned on the 17th of June following, he was complaining of his stomach.

His wife testified that she made an examination and found his stomach was black and blue with bruises all across the front, that he went to work again on the 18th; that he was due back on the 20th; but came back on the 19th; that when he came home he was screaming with pain and that she called Dr. Wolfert and Dr. Hertel; that he was taken to the hospital, where he died on the 21st; that the deceased was twenty-nine years old and weighed about 190 pounds, and was in good health prior to his last illness.

Dr. Hertel testified that he had known the deceased all his life; that prior to June, 1916, his health was perfect; that he was called to see him about the 20th of June, 1916, and that he found him suffering with peritonitis; that his abdomen was swollen, his pulse about 120 and his skin moist and clammy; that he made an examination of his stomach and sent him to the hospital; that when he opened the abdomen it contained a large quantity of serum and pus, bowels over whole region of abdomen swollen, cyanotic and in places showing beginning degeneration. He stated this condition could be caused by a strangulated bowel; a blood clot or interdisposition; but that he found none of these conditions present, and when asked the question, "Could that condition that you found there be caused by a blow on the stomach?" he answered, "That is the most fre-

quent cause of it;'' that this condition was due to injury; that the mark upon the abdomen was about one-half inch wide and three or four inches long, and was caused from external violence. Upon cross-examination he stated that he made out the death certificate, omitting to say anything about accidental causes; that he was advised to do so by the coroner, Dr. Padberg, in order to eliminate complications, and that he had several cases where they had put the diagnosis in this way, or as he saw fit, on account of the relations of the family, standing, etc.

Dr. Wolfert testified, in answer to a hypothetical question, that Merkel died from general peritonitis, or blood poisoning of the whole stomach, and that this could not have been caused by anything but a blow from the outside.

The testimony would tend to show further that this condition of the stomach did not originate in the region of the appendix, but had spread to that portion of the abdomen.

The plaintiff offered further testimony as to a reasonable amount for attorney's fees in bringing suit, etc.

Defendant's answer was a general denial, and at the close of plaintiff's evidence, defendant offered a demurrer which was by the court overruled. Defendant offered no testimony.

I. Appellant here seriously contends that from the record before us it clearly appears that the jury could not arrive at a verdict favorable to plaintiff except in violation of the rule that forbids the predicating of one inference upon another inference. We have gone over all of the authorities cited in support of this contention and have most carefully considered the able argument set up in support of the point here sought to be made and after mature consideration thereof have come to the conclusion that the point is without merit.

The record discloses that plaintiff herself testified that the insured was twenty-nine years old, five feet ten inches in height, and weighed about 190 pounds,

and that on the 15th day of June, 1916 was in perfect health. In this statement she is corroborated by another witness, a physician who had known the insured nearly all of his life. Plaintiff further testified that she next saw the insured on the 17th day of June when the insured, who was employed in the capacity of a railroad mail clerk, returned from his run to Nashville, Tennessee; that he then complained of his stomach and upon examination plaintiff found "his stomach was black and blue; *bruises all across the front of his stomach* . . . from his stomach on down into his bowels." (Italics ours.)

This testimony in itself is evidence of external violence. And on this point the jury had in addition the testimony of an expert witness to the effect that the black and blue marks could not have been caused by anything except external violence.

In light of this testimony we are of the opinion and so hold that the jury had before them testimony as to facts which, if they believed, were evidences in themselves that the deceased suffered external violence, which being true, it follows that in order for the jury to arrive at the conclusion that the deceased suffered external violence it was not necessary for them to predicate such finding upon an inference.

It was then within the province of the jury, it having been shown by competent testimony that the death of the deceased was due to general peritonitis, and further testimony that general peritonitis may result from external violence, to draw the inference that the general peritonitis was in point of fact caused by external violence. Up to this point there is then no violation of the rule that you cannot predicate a verdict upon an inference drawn from another inference, that is, piling inference upon inference.

Now, though the jury could infer that the deceased came to his death from general peritonitis caused by an external blow, there would still be one essential link missing to complete the claim of proof necessary to predicate a verdict favorable to plaintiff, namely, that

the external blow which caused the peritonitis was accidental and not self-inflicted. Absent any testimony whatsoever on this subject, the missing link is supplied by a presumption of law, to-wit, that the insured did not voluntarily inflict an injury upon himself. If we are correct in our view that there is such a presumption of law, then the result arrived at by the jury in the instant case is arrived at without piling inference upon inference in violation of the rule.

There has been some confusion due to the inaccurate use of the words, ''presumption and inference,'' which in some instances has left the impression that presumption and inference are synonymous, whereas these words have distinct and separate meanings. The word presumption in the strict legal sense ''should be applied only to a presumption af law,'' and as such may be defined as ''the deduction which the law expressly directs to be made from particular facts,'' whereas inference as distinguished from presumption of law is ''a deduction which may be made from any facts legally proved.'' ''The difference is that a presumption is a mandatory deduction, while an inference is a permissible deduction which the reason of the jury makes without an express instruction of law to that effect.'' [1 Jones on Evidence, 59.]

''Presumptions of law are usually founded upon reasons of public policy, social convenience and safety which are warranted by legal experience of courts in administering justice. The court must always instruct the jury as to the force and effect of legal presumptions. Presumtions of fact must always be drawn by a jury.'' [1 Greenleaf, Evidence, 107, 144.]

We are therefore of the opinion and so hold that under the record in this case, the jury predicating their finding upon competent testimony as to the facts and circumstances in the case and the inference which they could properly draw from such testimony, and taking into consideration the presumption of law above adverted to, could arrive at a verdict favorable to plaintiff

without predicating an inference upon another inference.

II. The point raised that the learned trial court erred in allowing plaintiff's expert witnesses to testify that the general peritonitis from which the insured suffered was due to a blow, over defendant's objection that such testimony invaded the province of the jury, is well taken.

One of the issues in the case was whether the general peritonitis with which, according to the physician who testified for plaintiff, the deceased suffered and was the cause of his death, was caused by external violence, and to permit a medical expert, over proper objection, to testify that the general peritonitis was due to an injury, is permitting such witness to "substitute his reasoning and conclusions for the reasoning and conclusions of the jury upon an issue before the triers of fact." [Deiner v. Sutermeister, 266 Mo. 505, l. c. 521, 178 S. W. 757.]

In Glasgow v. St. Ry. Co., 191 Mo. 347, 89 S. W. 915, the main question in the case was whether plaintiff's condition was the result of the alleged accident. Expert witnesses for plaintiff were permitted to testify, over timely objections, as to what was the cause that produced the plaintiff's affliction, and it was held on appeal that this constituted reversible error. In the course of the opinion it is said: "It was competent for them in giving their opinions, to speak of that which they knew from their scientific learning and experience; it was not competent for them to draw conclusions of fact from the evidence in the case, yet that is what they did. If the jury gave credit to the testimony of the physicians the verdict paraphrased would say, 'We the jury find that whilst the plaintiff's affliction might have resulted from many causes, yet the doctors have said it was the result of the fall, and we therefore so find.' The court in giving its approval to this testimony said to the jury, in effect, 'Whilst it is your duty to ascertain from all the evidence in the case whether or not the plaintiff's disease was produced by the fall he claims

to have received, and whilst these learned gentlemen have said there are many causes that produce such disease, yet in their opinion the plaintiff's trouble was produced by a fall; therefore, if you think these men are worthy of credit, you may base your verdict on their opinion, and find that there was a fall and that it produced this result.' It in effect authorized the jury to adopt the conclusion drawn by the experts from the evidence, rather than to draw their own conclusions." . . . "But the testimony of these expert witnesses went to establish the fact of the alleged fall, which was not a fact they learned from the medical books. Thus the weight of their testimony went into the scales on the question of whether or not there was an accident." [Castanie v. United Rys. Co., 249 Mo. 192, 155 S. W. 38; Atkinson v. School of Osteopathy, 240 Mo. 338, l. c. 355, 144 S. W. 816; Smart v. Kansas City, 208 Mo. 162, l. c. 202, 105 S. W. 709; Taylor v. Ry. Co., 185 Mo. 239, l. c. 256, 84 S. W. 873, and cases cited.]

Under the facts in this case we are therefore of the opinion and so hold that the admission of this testimony was prejudicial error.

III. This brings us to the last objection urged by appellant, namely, that there was no evidence of any vexatious delay, and that the court erred in submitting this question to the jury.

Section 7068, Revised Statutes of Missouri, 1909, provides for a recovery of such damages, "if it appear from the evidence that such company had vexatiously refused to pay such loss." It is true this is a question for the jury, if there is any substantial testimony upon which such a finding may be based. This is a matter to be determined by the jury, from all the facts and circumstances in the case, and it is not necessary that affirmative proof of vexatious delay be offered. However, there must be some testimony from which reasonable inferences may be drawn, showing a vexatious delay.

In the case at bar the attending physician, Dr. Hertel, who was plaintiff's witness in the case, stated that in the death certificate made out by him at the time of the death of deceased, he gave appendicitis as the cause of death. He was in a position to know more about the proximate cause of the death of deceased than anyone else, and the defendant would have a right to rely upon such statements, especially in view of all the other facts in this case, and a legitimate and proper right to defend against an action to recover the amount named in this policy.

As was said in Non-Royalty Shoe Co. v. Phoenix Assurance Co. (Mo.), 210 S. W. 37, l. c. 43, "It is from the very nature of the case, and from the protean form which the facts of the case assume, difficult, if not impossible, to frame any general rule for use in determining when a refusal to pay is vexatious and when it is not." There must be some substantial evidence tending to show that such refusal was wilful and without reasonable cause. We do not find such in this case and we think the action of the court in submitting this question to the jury was error. [Non-Royalty Shoe Co. v. Phoenix Assurance Co., supra, and cases cited.]

It follows from what we have said above that the judgment is reversed and the cause remanded.

*Reynolds, P. J.,* and *Allen, J.,* concur.