BY THE

ST. LOUIS, KANSAS CITY AND SPRINGFIELD

# COURTS OF APPEALS

AT THE

MARCH TERM, 1923.

---

AZZIE MERKEL, Respondent, v. RAILWAY MAIL ASSOCIATION, a Corporation, Appellant.

St. Louis Court of Appeals. Opinion Filed May 8, 1923.

1. INSURANCE: Accident Insurance: Death From External Violence: Evidence: Sufficiency: Question for the Jury. In an action to recover under the terms of an accident insurance policy, evidence reviewed and *held* sufficient to bring it within the province of the jury to determine as a matter of fact whether the death of the insured was due to general peritonitis or to appendicitis and that the jury could arrive at the conclusion that the insured had suffered external violence and had died from general peritonitis without piling inference upon inference.

2. ———: ———: Death: Presumption Against Self Inflicted Injury. In an action to recover on an insurance policy, absent any testimony whatsoever on the subject that the external blow which caused the general peritonitis was accidental and not self-inflicted,

(632)

the missing link is supplied by a presumption of law, to-wit, that the insured did not voluntarily. inflict an injury upon himself.

3. **REMARKS OF COUNSEL: Improper: Not Prejuicial Error Warranting a Reversal of the Jugment.** In an action to recover on an insurance policy, an objection to a statement by counsel for plaintiff in his argument to the jury that the insured's surgeon at the very instant the operation was performed, stated in his record, "before he ever dreamed there would be a law suit, long before he ever knew this man had an iota of insurance, that he didn't think his death had any connection at all with appendicitis," was well taken and should have been sustained, yet such statements, in view of the fact that the record is silent as to whether the surgeon at the time he performed the operation had in mind any future law suit or whether he knew at the time that deceased had any insurance, was, in the light of the entire record not error prejudicial to the merits of defendant's case, or such as would warrant a reversal of the judgment and remanding of the cause.

Appeal from. Circuit Court of the City of St. Louis.— *Hon. Wilson A. Taylor, Judge.*

AFFIRMED.

*Browrigg, Mason & Altman* and *E. P. Wilson,* for appellant.

(1) Under the contract as proven by the plaintiff, the defendant was liable in the event of death of the insured due to external, violent and accidental means and not arising out of appendicitis, whether caused by trauma or otherwise, and the burden was upon the plaintiff to prove such a death. (2) Where, from plaintiff's evidence, it appears that death may have resulted from any one of two or more causes, for only one of which the defendant is liable, plaintiff fails to make out a case. Wright v. Commercial Travelers Ass'n, 18 Mo. App. 464; Dunn v. Life & Accident Ins. Co., 197 Mo. App. 470; Atherton v. Railway Mail Ass'n, 221 S. W. 756; Epperson v. Postal Tel. & Cable Co., 155 Mo. 382; Fuch v. City of St. Louis, 167 Mo. 635; Cluett v. Union Electric L. & P. Co., 220 S. W.

867; Freeman v. Loyal etc., Ins. Co., 195 S. W. 497; Merritt v. Preferred etc., Ass'n, 98 Mich. 338.    (3) The burden is always on the plaintiff claiming under an accident policy to show that death resulted from a cause within the terms of the policy, and that burden is not sustained by showing facts which raise as strong or stronger probably that the death was due to some cause without the terms of the policy.  Wright v. Commercial Travelers Ass'n, 188 Mo. App. 464; Dunn v. Life & Accident Ins. Co., 197 Mo. App. 470; Atherton v. Railway Mail Ass'n, 221 S. W. 756; Freeman v. Loyal etc., Ins. Co., 195 S. W. 497; Merrit v. Preferred, etc., Ass'n, 98 Mich. 338.    (4) Plaintiff's evidence in this case showed, at most, a bare possibility of a causal connection between some external violence, indicated by marks on the abdomen of the deceased, and the abdominal peritonitis which might, independently of traumatic appendicitis, have caused his death.  The evidence of plaintiff indicated that a much more reasonable probability of the cause of death was either acute appendicitis due to trauma or acute appendicitis arising from natural causes independently of trauma, and as defendant was not liable for death due to either of the two latter causes mentioned, plaintiff failed to make out her case.    (5) In order to reach a conclusion that the death of the insured resulted from a cause within the terms of the policy, it was necessary for the jury to infer external violence from the very vague, uncertain and contradictory testimony as to the marks or appearances on the stomach or abdomen of the deceased, from that to infer that such external violence was accidental, and from that to further infer that the abdominal peritonitis which existed within was caused by such external violence rather than by appendicitis due to trauma or otherwise, and that notwithstanding the fact that the man had acute appendicitis accompanied by a perforated appendix.  A conclusion cannot be thus arrived at by piling inference upon inference and presumption upon presumption.  Phillips v. Ins. Co., 231 S. W. 947; Wright

v. Commercial Travelers Ass'n., 188 Mo. App. 464; Atherton v. Railway Mail Ass'n., 221 S. W. 752; Keifer v. Ins. Co., 201 Pa. 448; Hamilton v. Kansas City Southern Ry. Co., 250 Mo. 714; Swearengen v. Railroad, 221 Mo. 644; Yarnell v. K. C., etc., Ry. Co., 113 Mo. 570; Glick v. Kansas City, etc., Co., 57 Mo. App. 97. (6) The presumption against suicide does not carry with it the further presumption that death was accidental and under the rule declared by the Supreme Court of this State it is only where the circumstances show that the death must have been due to violent causes and was either accidental or suicidal, that the presumption of accident applies. Brunswick v. Standard Accident Ins. Co., 278 Mo. 154, 213 S. W. 45; Lessig v. Ins. Co., 169 Mo. 280. (7) It is only in the absence of evidence as to the cause of death that a presumption of accidental death will in any case be operative. Evidence of the plaintiff's own witnesses showed that acute appendicitis, which might be due either to natural causes or to trauma, existed as a present, probable, and altogether efficient cause of death. There was, therefore, no room for presumption in the case. Brunswick v. Standard Accident Ins. Co., 213 S. W. 50; Mockowik v. Railway, 196 Mo. 571. (8) The statement contained the proof of death submitted to the company that the cause of the death of the assured was acute appendicitis and ganger of the bowels was binding upon the plaintiff unless explained or overcome by other evidence. There was no evidence in this case which tended to explain or overcome that admission. Stephens v. Metropolitan Life Ins. Co., 176 S. W. 253; Castens v. Supreme Lodge Knights & Ladies of Honor, 175 S. W. 264; Almond v. Modern Woodmen of America, 133 Mo. App. 382. (9) The instruction offered on behalf of the plaintiff, was misleading, as under its terms the jury were permitted to find a verdict for the plaintiff, even though the death of the insured might have been caused by appendicitis. (10) The court erred in permitting counsel for the plaintiff, in his argument to the jury, to make statements as of fact

which were not based upon the evidence or supported by the evidence, and which were highly prejudicial to the defendant, and in overruling defendant's objections to said statements. Jackman v. St. L. & H. Ry. Co., 206 S. W. 246; O'Hara v. Lamb Const. Co., 197 S. W. 163. (11) Counsel warped and prejudiced the minds of the jury by improperly stating that it was necessary for one Young, who was thrown about in a mail car and injured, to sue the defendant association upon its policy.

*Edward W. Foristel,* and *James J. O'Donohoe,* for respondent.

(1) The decision of this court on the first appeal is the law of this case. The opinion is correct, clear, able and exhaustive. Benton v. St. Louis, 248 Mo. 98. The court on first appeal reviewed the evidence and decided there was sufficient evidence to send the case to the jury on subsequent appeal with substantially the same evidence (here it is more cogent); that question is *res adjudicata.* State ex rel. v. Broaddus, 238 Mo. 189; Costigan v. Michael Trans. Co., 38 Mo. App. 269; Campbell v. Hayden, 181 Mo. App. 681; Bank v. Stewart, 160 Mo. App. 643; Michaels v. Harvey, 195 S. W. 519; Remick v. Ins. Co., 195 S. W. 1049; Barrie v. Transit Co., 119 Mo. App. 38; Kerr v. Cusenbary, 69 Mo. App. 221; Cherry v. Railway, 61 Mo. App. 303. And "a determination by the appellate court on a former appeal that the evidence was sufficient to take the case to the jury on all the issues raised becomes the law of the case, whether right or wrong." White v. Int. Text Book Co., 156 Iowa 210. Furthermore, the answer on first appeal was a general denial. It did not invoke the defense that insured died of appendicitis. And no new issues can be made nor new defenses asserted after the case comes down for retrial. The defense of death from appendictis was open to defendant within the legitimate scope of the pleadings. It was too late on retrial to in-

voke that defense. Bange v. Legion of Honor, 153 Mo. App. 167, 168; State ex rel. Bankers Life Co. v. Reynolds et al., 277 Mo. 14; Railway v. McCarthy, 96 U. S. 258; Railroad v. Higdon, 234 U. S. 592, and cases cited. (2) The evidence showed that there was a black and blue mark on the insured's abdomen and that such mark was due to external violence, and the same produced peritonitis, which caused death. The matters do not rest upon inference or presumption, but are fully established by the evidence. And plaintiff having shown that death was caused by unexplained violent, external means, the presumption is that the injuries were accidental, and plaintiff's cause is established without direct proof upon that point. Merkel v. Railway Mail Association, 205 Mo. App. 484; O'Connor v. Columbian Nat. Life Ins. Co., 232 S. W. 218; Goodes v. Order of U. C. T., 174 Mo. App. 330; Hooper v. Standard L. & Acc. Ins. Co., 166 Mo. App. 209; Riska v. Railroad, 180 Mo. 168; Meadows v. Life Ins. Co., 129 Mo. 76; Cronkhite v. Travelers Ins. Co., 75 Wis. 116; Jenkins v. Pacific Mutual, 131 Cal. 121; Burnham v. Interstate Casualty Co., 117 Mich. 142; Van Eman v. Fidelity & Casualty Co., 201 Pac. 537; Caldwell v. Iowa, S. T. M. A., 156 Iowa, 327; Peck v. Association, 5 N. Y. Supp. 215; Travelers Acc. Ins. Co. v. Hunter, 70 S. W. 798; Preferred Acc. Ins. Co. v. Fielding, Admr., 35 Colo. 19. (3) While the insured died from peritonitis, yet the bodily injury which produced the same is the proximate cause of death within the meaning of the policy. Dezell v. Fidelity & Casualty Co., 176 Mo. 253; Fetter v. Fidelity & Casualty Co., 174 Mo. 256; Johnson v. Continental Casualty Co., 122 Mo. App. 369; Columbia P. S. Co. v. Fidelity & Casualty Co, 104 Mo. App. 157; Summers v. Fidelity Mut. Aid Ass'n, 84 Mo. App. 605; Trav. Ins. Co. v. Murray, 16 Colo. 296; Freeman v. Mercantile Acc. Ass'n, 156 Mass. 351; Travelers Ins. Co. v. Melick, 65 Fed. 178; Isitt v. Passengers' Assur. Co., 22 Q. B. Div. 504; Peck v. Equitable Accident Ass'n, 52 Hun. (N. Y.) 255; Continental Casualty Co., v. Matthis, 150 Ky. 477; Schumacher

v. Great E. Cas. Co., 197 N. Y. 58; U. S. H. & Acc. Ins.
Co. v. Harvey, 129 Ill. App. 104; Martin v. Mfg. etc.
Co., 151 N. Y. 94; Fidelity & Casualty Co. v. Morrison,
120 Ill. App. 360; Delaney v. Modern Acc. Club, 121
Iowa, 528. (4) The question as to whether the ver-
dict is against the weight of the evidence is peculiarly
a question for the trial judge who heard the testimony
and saw the witnesses. In this State, appellate courts
always defer to the judgment of the trial court in pass-
ing upon the weight of the evidence. Nephler v. Wood-
ward, 200 Mo. 179; Patton v. Fox, 179 Mo. 525; Wal-
ser v. Wear, 141 Mo. 443; Ames v. Arme, 28 Mo. 381;
Strode v. Abbott, 102 Mo. App. 169. And in an action
on an accident policy, plaintiff establishes a prima-facie
case by proof of external and violent means causing
death, accidental means is presumed. And where a
prima-facie case is established, it never can be taken
from the jury. Foster v. Ins. Co., 233 S. W. (Mo. App.)
499; Keily v. K. of F. M., 179 Mo. App. 608; Gooden
v. M. W. of A., 194 Mo. App. 666; Peterson v. Railroad,
265 Mo. 480 (cases cited). (5) That death was due to
the excepted risk of appendicitis is a matter of defense,
which need not be negatived, or anticipated in the pe-
tition or embodied in plaintiff's instructions. Red Men's
Fraternal Acc. Ass'n, v. Rippey, 181 Ind. 454. The
principle is the same as contributory negligence, which
need not be negatived by plaintiff in the pleadings, and
need not be embraced in the instructions. Furthermore,
the defendant's instructions submitted to the jury its
affirmative defense of appendicitis and thus "debarred
itself from insisting that plaintiff's instructions were
erroneous. Harmon v. United Rys. Co., 163 Mo. App.
442. (6) The burden is always on the insurer to show
that death resulted from a cause excepted in the policy.
Beile v. T. P. A., 155 Mo. App. 629; Franklin v. Con-
tinental Casualty Co., 184 Ill. App. 259; Allen v. T. P. A.,
163 Iowa, 217; Union Accident Co. v. Willis, 44 Okla.
578; Starr v. Aetna Life, 41 Wash. 199. Admissions
contained in the proofs of death are not conclusive on

the beneficiary. Holmes v. Protected Home Circle, 199 Mo. App. 528; Remfry v. Ins. Co., 196 S. W. (Mo. App.) 775; Vormehr v. K. O. F. M. 198 Mo. App. 276; Bambergs v. Tribe of Ben Hur, 159 Mo. App. 102. (7) And there is no merit in the assignment of error founded on remarks of counsel for plaintiff, for reasons, among which are: (a) The observations of plaintiff's counsel were legitimate. (b) The question is one for the sound discretion of the trial court. Huckshold v. Railway, 90 Mo. 559; Obuchon v. Boyd, 92 Mo. App. 419; Brainkman v. Gottenstroeter, 153 Mo. App. 355. (c) Exceptions must include failure of the trial court to rebuke counsel. State v. Chenault, 212 Mo. 137; Eppstein v. Railway, 197 Mo. 738. (d) Error cannot be found upon garbled remarks of counsel; and the address of opposing counsel should be given in full, since the alleged observations may be retaliatory only and hence proper. State v. Hyland, 144 Mo. 302; State v. Summar, 143 Mo. 220. (e) Where, as here, the judgment is for the right party, remarks of counsel are immaterial. Sachewitz v. Am. Biscuit Co., 78 Mo. App. 144; Mason v. Mining Co., 82 Mo. App. 371. (8) It is the public policy of this State, evidenced by statute and decided cases, not to reverse judgments unless error has interposed which materially affects the merits of the controversy to the injury of appellants. There was no material error committed in this case, and the verdict, being for the right party, should not be disturbed. Sec. 1513, R. S. 1919; Buck v. Buck, 267 Mo. 644; Cohran v. Polk, 252 Mo. 261; Trainer v. Spalerite, 243 Mo. 359; Atkinson v. Am. School of Osteopathy, 199 Mo. App. 251; Dawson v. Railroad, 197 Mo. App. 169; Allen v. Forsythe, 160 Mo. App. 262.

BECKER, J.—This case is here on second appeal. Our opinion in the original appeal is to be found in 205 Mo. App. 484, 226 S. W. 299, where we held that the plaintiff had made out a case for the jury but reversed the judgment and remanded the cause for a rehearing because of the introduction on behalf of plaintiff, over defendant's objection, of testimony by expert witnesses which invaded the province of the jury.

Plaintiff brought suit against the defendant in the circuit court of the city of St. Louis to recover judgment under the terms of a "Limited Accident Insurance Policy" issued by the defendant, insuring Henry J. Merkel against bodily injuries received through external violence and accidental means. Plaintiff who is now the widow of Henry J. Merkel was the named beneficiary in said policy which when issued was for the sum of $3000. Subsequent to the issuance of the policy the amount thereof was increased to $4000, at which time it was specifically provided and agreed that the defendant company should not be liable for any claim arising from appendicitis caused by trauma or otherwise.

The petition is in the usual form and alleges that the death of the insured was caused by reason of bodily injuries received through external violence and accidental means.

The amended answer filed after the case was here on first appeal, in addition to a general denial, specifically sets up the provisions of the policy which exempts the defendant from liability in the event of the death of the insured resulting from appendicitis caused by trauma or otherwise and alleges that the death of the insured was caused by appendicitis.

The case was tried to a jury and resulted in a verdict for plaintiff for the sum of $4000 with interest thereon at the rate of six per cent. per annum from July 24, 1916, the verdict aggregating $5080. From the resulting judgment defendant in due course appeals.

Plaintiff adduced testimony tending to prove that she was the widow of the deceased, Henry J. Merkel, who, preceding his death was a railway mail clerk in the service of the government, traveling from St. Louis to Nashville; that on June 15, 1916, he was over 29 years of age, weighed 190 pounds, and had up to that time enjoyed good health; that on said date, at about three o'clock in the afternoon he left the city on a mail train in the course of his employment and that when he returned on the 17th of June following he complained of pains in his stomach.

Plaintiff herself testified that she made an examination and found black and blue marks and abrasions across his stomach, covering a space about four inches long by about an inch and a half to two inches wide. As to the appearance of the abdomen, she was asked:

"Q. Just tell the jury in your own language how you came to make an examination of his stomach? A. Well, he came home complaining of his stomach hurting across here (indicating), and I looked and there were black and blue marks across here (indicating), and the skin was busted, kind of parched, like you heat something.

"Q. The skin was abraded, do you mean? A. Yes, sir."

As to the location of the marks, on cross-examination she was asked:

"Q. And was it above the navel of below the navel, or below or across the navel? A. I can't tell exactly, but it was right across the stomach, and I can't tell you exactly where it was."

Plaintiff testified that she applied hot water applications to his stomach all afternoon of June 17th; that one o'clock in the afternoon of the 18th of June he left his home to make his usual run from St. Louis to Nashville, Tennessee, intending to be gone two days, but on the following day he felt so badly that he returned home, at which time she again examined his stomach and found that the black and blue marks had practically extended all over his stomach and she called in Dr. Hertel who, after making an examination of the insured, had the insured removed to a hospital and plaintiff did not see him again until the 21st of June, after he had died.

Dr. Hertel testified that he had known deceased all his life; that prior to June, 1916, his health was perfect and he weighed about 190 pounds and was very muscular; that when he was called in to see him about the 20th of June, 1916, he found him suffering, his skin was moist; his respiration and pulse rapid; his abdomen swollen to a marked extent "so much so that the ribs

41—211 M. A.

disappeared and in fact he was like a barrel;" that on the outside of the stomach, in the region of the umbilicus, he found a yellowish tinge; that he had the insured removed to a hospital where he operated upon him; that upon opening the obdomen he found it to contain large quantities of serum and pus; that the bowels over the whole region of the abdomen were swollen; that the bowels were cyanotic; that the circulation had been cut off and the bowels showed signs of decay; that the bowels showed signs of rotting; that the omentum or covering of the bowels over the entire area was also swollen; that the appendix appeared to be in conformation with the rest of the intestines and was perforated; that the condition that he described as having been found in the insured could have been caused by a blow across the stomach.

We quote the following from Dr. Hertel's direct examination:

"Q. Could that be caused by any other condition, doctor, except injury? Could that external condition you saw, doctor, have been caused by anything except a blow? In your opinion, of course. A. No, sir.

"Q. Could that external condition have been caused by an appendicitis, doctor? A. No, sir.

"Q. Could the condition you found—could the external condition have been caused by an appendicitis? A. No, sir..

"Q. What, in your opinion, doctor, was the cause of death? A. The immediate cause of death was peritonitis.

"Q. Could this peritonitis have been caused from an injury to the outside doctor?. A. Yes, sir."

On cross-examination Dr. Hertel was asked:

"Q. And there was no other perferations anywhere else excepting the appendix? A. Only the appendix; yes, sir."

Dr. Hertel further testified that general peritonitis results from infection and could be caused by a perforated appendix, but when asked whether appendicitis

"might cause just such a condition as you found on the inside of this man's abdomen" he answered; "Not such a marked condition; not where we have a degeneration of all the bowels in such a short time; I would say it never occurs in an acute appendicitis in that marked condition; and I would make that record of about four hundred and some odd cases of my own that I have operated on."

Again, later on in the cross-examination, this witness was asked the following questions:

"Q. Now, haven't you seen many cases of appendicitis due to natural causes, where the whole bowel, or where the bowels were swollen and blue and inflamed, just as you have described here? A. You will see where the whole bowel is swollen due to a general peritonitis, but you will not find those distinct patches throughout.

"Q. Well, describe those patches now? A. This cyanotic area that I spoke of a minute ago?

"Q. Describe the patches now. A. That is a form of the bowel in which the swelling has occurred and circulation has been disturbed, which will cause a blueness of the bowel.

"Q. In how many places did you find that? A. They were scattered throughout the entire bowel. . .

"Q. Now this man's abdominal peritonitis that you found there, that arose out of an acute appendicitis, didn't it? A. I would say no, sir."

In the course of the cross-examination the witness stated that this man died of acute appendicitis and peritonitis and which was the result of an injury. But later on again he was asked the questions:

"Q. The peritonitis was preceded by appendicitis as a cause, was it not? A. I will say no.

"Q. What caused the peritonitis, then? A. That was caused by the injury to his bowel.

"Q. And then when you say that the bowel was injured by a blow, do you mean that in your opinion this perforation of the appendix was caused by a blow? A. No, sir, I will say not that; I will say his general condition was caused by a blow.

"Q. Now, doctor, I believe you testified that this abdominal peritonitis is caused by certain organisms that get out into the abdominal cavity? A. Yes, sir.

"Q. Germs? A. Yes, sir.

"Q. Now, if there were no perforations anywhere else except in the appendix, how could these organisms have gotten out from any other source? A. They do not have to be perforated to produce peritonitis. The bowel can become injured, and through the process of osmosis the bacillus will leave the bowel and cause peritonitis."

This witness admitted that he had signed the death certificate which was filed in the office of the Bureau of Vital Statistics in which he stated the cause of the death as "abdominal peritonitis; duration three days; contributory, perforated appendix; during two days," and that he had not stated in the certificate that death was due to violent causes. The witness, however, in explanation, stated that he had called up the coroner and told him that he had operated on a patient named Merkel, and that he thought the death was due not to appendicitis but to injury, and upon the coroner asking whether the injury had been self-inflicted he had answered that it was not, and also explained to the coroner that he had found a ruptured appendix, whereupon the coroner said: "Hertel, sign that as appendicitis and it will relieve us of a lot of complications."

On re-direct-examination the witness was asked the questions:

"Q. Doctor, in your opinion, did the appendicitis have anything to do with the cause of this man's death? A. No, sir.

"Q. It did not. A. No, sir."

Dr. Louis J. Wolfort, a witness on behalf of plaintiff, testified that he was present in court and had heard the testimony of Mrs. Merkel as well as that of Dr. Hertel, and that, basing his opinion upon the testimony adduced by them, Merkel's condition could not have been caused by appendicitis, "absolutely not," and that in his opinion the insured had died of a general peritonitis.

On cross-examination this witness testified that "an appendix perforation might produce a peritonitis but that a man who is struck on the abdomen and that injury produces a peritonitis, that peritonitis in its sweep spreads throughout the whole gut. It gets as far as the appendix, which is the weakest part of the gut and nothing is more natural than for that to perforate."

He was asked the questions:

"Q. Now, doctor, where you find a man with the hole in his appendix, pains all through the abdomen, the abdomen swollen, an abrasion on his abdomen and black and blue marks, do you think that you can get away from that hole in the appendix and disregard that as a cause for peritonitis? A. Absolutely. Now I'll tell you why I make that statement. A man is struck on the abdomen; he is in good health—in perfect health. He gives a history of having been well all his life with no attack of appendicitis. I think the blow he received on his abdomen produced peritonitis, as I explained before, and that inflammation getting through his gut attacked the appendix and caused the perforation as I say. If he had lived long enough every one of those black and blue marks that have been described would have been ruptured through."

.  .  .

"Q. Well, that was appendicitis, was it not? A. I do not think that it was primarily an appendicitis, no, positively, not.

"Q. But you think that he had peritonitis, do you not? A. I don't think this man had appendicitis. I think he had a general peritonitis that attached every portion of his gut, the appendix included, and that happened to rupture."

Dr. Edward B. Kinder, a witness for plaintiff, testified in answer to a hypothetical question based upon the testimony of Dr. Hertel and Mrs Merkel, that in his opinion the insured had died from general peritonitis; that general peritonitis could be caused by a blow from the outside—from a blow which would be severe enough to cause black and blue marks on the outside of a man's

stomach. He further testified that appendicitis could not cause black and blue marks or abrasions on the outside of the stomach.

The witness further testified that "black and blue marks are significant to the surgeon's mind; that black and blue marks mean the breaking of blood vessels and especially breaking the blood vessels on the abdomen which is a very resilient organ and causes the muscles to contract and it takes a very hard blow on the abdomen to make black and blue marks, much more so than the bones underlying, or smething of that kind."

"Q. If you found black and blue marks and peritonitis such as was found in this case, to what would you attribute the peritonitis? A. I would attribute it to traumatism.

"Q. What would you consider that injury from? A. From some injury to the covering of the abdomen."

On behalf of defendant several witnesses testified that they were railway mail clerks and worked in the same car with the insured on his trip leaving St. Louis on the afternoon of June 16, 1916; that so far as they had observed while working in the car on that trip Merkel had not been thrown about the car by any unusual movement of the train; that the deceased made the entire trip, returning to St. Louis on the 18th of June, and started out again on the trip of the 18th of June, but on account of illness Merkel returned to St. Louis before completing the trip. They further testified that the mail distributing cars had numerous devices for protecting the mail clerks while doing their work, while the train was in motion, such as hand-rails above their heads and various other things.

Dr. Clopton testified for the defendant in answer to a hypothetical question that the abdominal peritonitis which the deceased died from, in his opinion, was primarily caused by appendicitis accompanied with peritonitis, and that in his opinion there was no "necessary or probable connection between the abrasions and the the black and blue marks, if any, on the stomach of the insured caused by a blow, and the abdominal peritonitis."

On cross-examination this witness testified that had he performed the operation in the case he was of the opinion that he could tell whether or not the appendix was the seat of the trouble or whether the peritonitis started some place else.

Dr. Floyd testified as a witness for defendant in answer to a hypothetical question that in his opinion the insured died of acute appendicits. On cross-examination he stated that had he performed the operation he could have told whether or not the peritonitis started in the appendix or started some place else.

Dr. Howard E. Happel stated from the facts set up in an hypothetical question that in his opinion the insured died of acute appendicitis and peritonitis. With reference to the black and blue marks with abrasions on the skin as was testified to by Mrs. Merkel as having been found on the abdomen of the insured, this witness testified that such marks were the result of a blow, and in answer to the question, ''that resulted from a violent blow, did it not?'' he answered, ''Yes, sir.''

In the medical proof of cause of death filed with the defendant company, as required under the provisions of the policy in question, the cause of death was given as ''acute appendicitis and ganger of the bowels caused by injury received on June 17, 1916. According to history of patient I do not think that such a condition as he had could result from acute appendicitis without injury.''

It is seriously urged that defendant's demurrer to the. evidence should have been sustained for the reason that upon the record in the case the cause of Merkel's death was a matter of mere conjecture. In support of this contention learned counsel for appellant urged that upon the authority of the case of Phillips v. Insurance Co., 231 S. W. 917, decided by our Supreme Court since this case was here on first appeal, it must be held that upon the record before us the jury could not arrive at a verdict in favor of plaintiff excepting by piling inference upon inference, and that therefore plaintiff failed to make out a case for the jury. A careful readng of the Phil-

lips case, however, has convinced us that the point is without merit.

The facts in the instant case are clearly different from those in the Phillips case. Phillips, a man 60 years of age, in bad health, was found on the landing at the foot of the stairs on his knees, holding the door knob trying to raise himself in that way; no sound of a fall or outcry or other noise was heard by any witnesses. He died about four hours after he was stricken.

Some of the witnesses in the Phillips case testified to a slight bruise or abrasion on his forehead in the region of his right eye, though the physician who performed the post mortem, testified that he had looked for but had observed no bruise on Phillips' forehead. The post-mortem examination, which extended only to the opening of the skull and an examination of the brain was made by the coroner's physician and showed no injury to the skull or to the brain but did reveal a cerebral hemorrhage. Some weeks later, however, an autopsy was performed upon the body and according to the testimony of the doctor performing the autopsy, it tended to show the presence of arteriosclerosis in an advanced stage, enlargement of the muscles of the heart and chronic Bright's disease, but no evidence of injury to the skull or membrances covering the surface of the brain or brain itself.

Our Supreme Court in the course of its opinion says that the record shows, "beyond question that death was caused by cerebral hemorrhage. In spite of the testimony touching the appearance of the insured given by lay witnesses, there can be no doubt but that he was a victim of at least two deadly maladies." . . . From the presence of the bruise on his forehead the jury was doubtless authorized to infer a fall. Such was *not a necessary conclusion*, however, for the reason that the bruise was of such a superficial character that it might have been caused by insured bumping or rubbing his head against the door in attempting to pull himself up, or possibly by a fall in attempting to raise himself from the floor."

"But from the inference of the fall drawn from the

presence of the bruise it does not necessarily follow that such fall was accidental rather than the result of the hemorrhage of the arteries of the brain. *The physical condition of the insured was such that his fall could just as well have been caused by cerebral hemorrhage, conceding that such fall occurred.* With the positive and uncontradicted evidence of the diseased condition of the insured and that an actual cerebral hemorrhage took place, it is not proper to build upon the inference of a fall from the fact of a bruise the further inference that such fall was the result of accident rather than disease. *The fall can be as readily attributed to disease as to accident from the evidence before us, and it devolves on plaintiff to show that it was due to accident.*"

"Furthermore, if the jury be permitted to indulge the inference of a fall and the further inference that such fall was accidental, yet must an additional step by inference be taken, and that is that such fall was the proximate cause of the death of the insured." (Italics ours.)

The Supreme Court therefore ruled that since it was necessary to pile inference upon inference to establish a fact necessary to the proof of plaintiff's case, that there was no issue of fact to submit to the jury and the defendant's demurrer to the evidence should have been sustained.

In the instant case, however, there is the uncontradicted testimony that Merkel's stomach in the region of his navel was black and blue and had abrasions on it, which in themselves are evidences of external violence, a fact which is uncontradicted. Even one of the defendant's witnesses, namely, Dr. Howard E. Happel, testified that these marks were not alone the result of a blow but from a violent blow. Furthermore, there is abundant testimony that the black and blue marks as well as the abrasions could not have been caused by appendicitis, whereas in the Phillips case the presence of a bruise upon the forehead, as our Supreme Court says in the opinion, was of such a superficial character "that it might

have been caused by insured bumping or rubbing his head against the door in attempting to pull himself up, or possibly by a fall in attempting to raise himself from the floor,'' after Phillips had been caused to fall as the result of a hemorrhage of the arteries of the brain. ''Phillips' physical condition was such that his fall could just as well have been caused by cerebral hemorrhage, conceding that such fall occurred,'' whilst in the instant case the black and blue marks and the abrasions upon Merkel's stomach were in themselves evidences of external violence.

In light of this situation we are still of the view, as expressed in our opinion when this case was here on first appeal, that the jury had before them testimony as to facts which if they believed, were evidence in themselves that the deceased suffered external violence, which being true it follows that in order for the jury to arrive at the conclusion that the deceased suffered external violence it was not necessary for them to predicate such finding upon an inference. [Merkel v. Railway Mail Association, 205 Mo. App. 484, l. c. 491, 226 S. W. 299.]

Again there was ample testimony by the physician who performed the operation upon the insured that his death was due to general peritonitis, which was corroborated indeed by several physicians who testified that from the condition that the physician in attendance at the operation testified he found upon opening up Merkel's abdomen, in their opinion Merkel came to his death from general peritonitis and not from appendicitis. And even though this testimony was contradicted by the physicians who testified on behalf of the defendant to the effect that the conditions found at the time of the operation, as testified to on behalf of the plaintiff, in their opinion showed that the deceased came to his death as the result of appendicitis, clearly brought it within the province of the jury to determine as a matter of fact that the death of the insured was due to general peritonitis and not to appendicitis. We have then advanced to the point where the jury could, without drawing any in-

ference from the testimony adduced in the case, arrive at the conclusion that the insured had suffered external violence and that he had died from general peritonitis.

There is abundant testimony in the record, which if believed by the jury, tended to prove that the general peritonitis was in point of fact caused by external violence. However, there would still be one essential link missing to complete the chain of proof necessary to predicate a verdict favorable to plaintiff, namely, that the external blow which caused the general peritonitis was accidental and not self-inflicted. Absent any testimony whatsoever on this subject, the missing link is supplied by a presumption of law, to-wit, that the insured did not voluntarily inflict an injury upon himself. If we are correct in our view that there is such presumption of law, then the result arrived at by the jury in the instant case is arrived at by drawing but a single inference, namely, that the general peritonitis was in fact caused by the blow which caused the black and blue marks and abrasions on Merkel's stomach, and therefore without piling inference upon inference in violation of the rule. We are therefore of the opinion and so hold that under the record in this case the jury predicating their finding upon competent testimony as to the facts and circumstances in the case and an inference which they could properly draw from such testimony, and taking into consideration the presumption of law above adverted to, could arrive at a verdict favorable to plaintiff without predicating an inference upon another inference. It therefore follows and we so rule that the court below properly submitted the case to the jury.

It is assigned as error that counsel for plaintiff was permitted in his argument to the jury to state that "Dr. Hertel at the very instant this operation was performed, and he had his record here, and a record made at the very minute the operation was performed, Dr. Hertel stated on that record, before he ever dreamed there would be a law suit, long before he ever knew this man had an iota of insurance, that he didn't think his death

had any connection at all with appendicitis." This statement was objected to on the ground that there was no record introduced that "showed anything of the sort and he didn't give any such testimony from that record." The objection was overruled.

An examination of the record has convinced us that the objection was well taken and should have been sustained. It is true that Dr. Hertel while testifying as a witness produced his record which he stated he had made at the time of the operation, but he was not permitted to read from that record owing to the timely objection of counsel for defenadant. He was, however, permitted to refresh his memory and then testify. It is therefore true that Dr. Hertel did in point of fact make a memorandum as to the condition that he found the insured in at the time he operated upon him; that while Dr. Hertel was upon the witness stand after he had refreshed his memory by reading his record, he testified the insured came to his death from general peritonitis and not as the result of appendicitis. The record, however, is silent as to whether Dr. Hertel at the time he performed the operation had in mind any future law suit or whether he knew at the time that Merkel had any insurance. However, in light of the entire record before us we are unwilling to rule that the action of the court in failing to sustain the objection to the statement quoted above made by plaintiff's counsel in his argument to the jury was error prejudicial to the merits of the defendant's case and warrants a reversal of the judgment and a remanding of the cause.

Appellant has set up in its points and authorities several minor assignments of error. We have carefully considered them all but it would needlessly lengthen this opinion to consider them. It is sufficient to say that we find no error which would warrant a reversal of the judgment herein. The judgment should be and is accordingly ordered affirmed. *Allen, P. J.,* and *Daues, J.,* concur.