MATTIE E. VERNON, Appellee, v. IOWA STATE TRAVELING MEN'S ASSOCIATION, Appellant.

Accident insurance:   EVIDENCE:   RES GESTAE.   In this action upon an
1   accident policy, in which it was claimed that death resulted from blood poisoning due to an abrasion of the skin by means of a brush or other implement used by a bath attendant, the exhibition of the abrasion and the remark of deceased concerning his rough treatment while in the bathroom, made immediately following his bath, was admissible as *res gestae*. And subsequent declarations of present pain in the locality of the abrasion were also admissible as *res gestae*, and material as indicating the probable cause of death.

Same:   PRIVILEGED COMMUNICATIONS.   Statements of deceased made
2   to his wife and parents, both before and after he became a member of the association, concerning the condition of his health were privileged and therefore inadmissible.

**Same:** EXCLUSION OF EVIDENCE: PREJUDICE. The striking out of evidence concerning a fact practically conceded upon the trial is not prejudicial.

**Same:** CAUSE OF DEATH: BURDEN OF PROOF: INSTRUCTIONS. Where the by-laws of an accident association, providing that whenever a member in good standing dies within a certain time, the result solely of external, violent and accidental injury, are by reference made a part of the contract of insurance, the burden is upon the plaintiff to show that death resulted from such cause. But where the association claims that death resulted from one of the causes excepted by the contract, it has the burden on that issue. The instructions in this case are held to properly state the burden resting upon plaintiff to show that death was due solely to the accident, and did not result directly or indirectly in consequence of disease.

**Same:** CONSTRUCTION OF CONTRACT. The provision in an accident policy that there shall be no liability for an injury or death resulting in whole or in part, directly or indirectly, from disease, etc., will be construed most strongly against the association; and will be held to apply only to such diseases, or bodily or mental infirmity, as in some manner contribute, directly or indirectly, either to the injury or death.

**Same.** The provision of an accident policy exempting the association from liability for death resulting directly or indirectly, wholly or in part, from medical or surgical treatment, is held to cover cases of accident growing out of such treatment, and not to apply to medical or surgical treatment necessitated by an accident. But in the instant case this defense was not available to the defendant because not pleaded.

**Same:** REFUSAL OF INSTRUCTIONS. Where the claimed accident was an abrasion of the skin by means of a brush used by a bath attendant, and, after properly defining the terms "accident" and "accidental," the court charged that plaintiff had the burden of showing that the accident as thus described caused the death, and that it must appear from a preponderance of the evidence that death was caused proximately and solely by external, violent and accidental means, the jury could not have returned a verdict for any other cause than that claimed; and refusal to instruct that plaintiff could not recover if death was caused by an operation to relieve deceased from a sore or boil on his limb was not prejudicial.

**Instructions:** HARMLESS ERROR. Where a division of a pleading was withdrawn during the trial and the attention of the jury was

called to that fact, but in stating the issues the court by mistake included the same though he did not read it to the jury, and by oversight the instructions went to the jury without correction, omission to read that portion of the instruction, and a subsequent showing that the jury did not consider the same in making up their verdict, removed any possible prejudice. Moreover the instruction would not have been prejudicial if read to the jury; as the court specifically directed their attention to the issues' in the main part of the charge and there made no reference to the withdrawn issue.

*Appeal from Polk District Court.*—HON. HUGH BRENNAN, Judge.

WEDNESDAY, NOVEMBER 20, 1912.

ACTION at law upon a certificate of membership in the defendant association issued to Leo O. Vernon; plaintiff being the beneficiary named in said certificate. Upon issues joined, the case was tried to a jury, resulting in a verdict and judgment for plaintiff, and defendant appeals.—*Affirmed.*

*Sullivan & Sullivan,* for appellant.

*Dunshee & Haines,* for appellee.

DEEMER, J.—The defendant, a mutual benefit accident association, on the 21st day of February, 1905, issued to Leo O. Vernon a certificate of membership, naming plaintiff (his wife) as beneficiary. The certificate was issued pursuant to an application of the assured in which he stated in answer to an interrogatory that he had some kidney trouble. He left unanswered a question as to whether or not he had ever had Bright's disease. Assured died on the 30th day of July, 1909, and plaintiff claims that his death was the result of blood poison due to an abrasion of skin on one of his limbs, caused by the use of a brush or other implement in the hands of a bath attendant while giving him a bath at a sanitarium in

the town of Colfax. Defendant denies that he died of blood poisoning, and claims that his death was caused or contributed to by a diseased condition of the kidneys. On these issues the case was tried to a jury with the result hitherto stated. Numerous assignments of error are made in the brief, and to such as are regarded as material we shall now devote our attention.

I. In making her case, plaintiff was permitted to prove over defendant's objections that early in the month of July of the year 1909, while she and her husband were at the sanitarium in Colfax, the husband went to the bathroom for a bath, and that upon his return he exhibited to her one of his limbs, disclosing an abrasion of the skin, with the remark, "I want to show you how rough that damn fool was with me in the bathroom." This testimony was properly *res gestæ* of the transaction, and there was no error in overruling defendant's objection. *N. A. Ass'n v. Woodson*, 64 Fed. 689 (12 C. C. A. 392); *Keyes v. Cedar Falls*, 107 Iowa, 509; *Insurance Co. v. Mosley*, 8 Wall. 397 (19 L. Ed. 437).

1. ACCIDENT INSURANCE: evidence: res gestae.

During the illness which followed and finally resulted in death, it seems that deceased was in pain from the wound, and witnesses were permitted to testify to his declarations of present pain in the limb. In this there was no error. These declarations were also part of the *res gestæ* and were material as indicating a probable cause of death.

Defendant sought to show the assured's condition of health, both prior to and after he became a member of the association, and before it is claimed he received his injuries by declarations or admissions made by him to his father and mother, and also to his wife, the plaintiff. The declarations said to have been made to his wife were absolutely privileged, and therefore inadmissible.

2. SAME: privileged communications.

Our attention has not been called to any other declaration sought to be introduced; but, if such were offered, they

were inadmissible as against the plaintiff, unless shown to have been part of the *res gestæ.* These propositions are ruled by the *Sutcliffe v. Association,* 119 Iowa, 220, and need not be further elaborated.

Complaint is made of the striking out of some of plaintiff's testimony, and particularly of a statement made by her that her husband "was troubled with a slight kidney trouble ever since the Cedar Rapids fire." There is some doubt about whether the ruling went this far, but, if it did, there was no prejudice, for this fact was virtually conceded upon the trial. Again the witness said that her only means of knowledge was from statements made to her by her husband. Assuming that to be true, the ruling seems to be sustained in the *Sutcliffe* case, *supra.*

3. SAME: exclusion of evidence: prejudice.

Some rulings on the rejection of testimony were erroneous, but they were either fully covered by subsequent admission or were without prejudice.

II.   The certificate of membership, or the articles of incorporation and by-laws which by reference were made a part of the certificate, contained the following, among other, provisions.

Art. 6, Sec. 2.   Benefits: Whenever a member in good standing shall, through external, violent and accidental means, receive bodily injuries, which shall, independently of all other causes result in death within twenty-six (26) weeks from said accident, the beneficiary named in his application for membership or his heirs, if no beneficiary is named therein, shall be paid the proceeds of one assessment of two ($2.00) upon each member in good standing, but in no case shall said sum exceed the sum of five thousand ($5,000) dollars, and shall be in full satisfaction of all liability to the said deceased member, his beneficiary, heirs or legal representatives.

Art. 6, Sec. 6.   Benefits: Nor shall this association be liable in any manner to any member or beneficiary for any indemnity or benefit for accidental death, loss of limb, sight, disability resulting wholly or partially, directly or in-

directly, from any of the following causes, conditions or acts, or when the member is under the influence or affected by any of the conditions or acts to wit: disease, bodily or mental infirmity, medical or surgical treatment. . . . Each of the foregoing causes, conditions or acts are expressly exempted from all the provisions of these by-laws granting to members or beneficiaries thereof benefits or indemnities.

In view of these provisions, and in the light of the testimony, it is contended for appellant that the plaintiff did not

4. SAME: cause of death: burden of proof: instructions.

make out a case, and that the court erred in some of its instructions; and also erred in denying certain requests made by the defendant. That all these provisions became a part of the contract, and that the burden was upon plaintiff of showing that the deceased came to his death by external, violent, and accidental means, is well established by authority. *Binder v. Association,* 127 Iowa, 25; *Carnes v. Association,* 106 Iowa, 281; *Taylor v. Insurance Co.,* 110 Iowa, 621.

But it is also true that the burden was upon the defendant to show that death resulted from one of the causes excepted from the contract of membership. *Jones v. Association,* 92 Iowa, 652; *Carnes v. Association,* 106 Iowa, 281.

The trial court did not err to defendant's prejudice in instructing upon these propositions, but it is contended that it erred in giving the following:

(4) It is provided in the by-laws of the defendant association, which is a part of the contract sued on, that no benefits shall be paid for death caused wholly by disease, nor in any case except when the accidental injury was the proximate and sole cause of the death. Under the terms of this contract, the defendant is only liable in the event that death resulted solely, and independently of all other causes, from the alleged accident, and this the plaintiff must prove by a preponderance of the evidence. This provision of the by-laws of the defendant association entered into became and was at the time of the death of the said Leo O. Vernon, a part of the contract between him and the defendant association, and is

binding upon the plaintiff and the defendant association in this case.    (5) If you find by a preponderance of the evidence that an accident happened to the deceased, Leo O. Vernon, by an abrasion of the skin of his left leg by the use of a brush by an attendant administering said bath, and that from such abrasion blood poison or septicæmia set in, and you further find that by virtue of this injury and the resulting blood poison, if you find there was such injury and blood poison, death resulted as the sole result thereof, then and in that event the plaintiff will be entitled to recover in this case, and you should so find by your verdict.    If, however, you find that the death of the said Leo O. Vernon resulted directly or indirectly from or in consequence of disease, then there can be no recovery in this case, and your verdict in that case should be for the defendant.

Error is also predicated upon the court's failure to give the following bearing upon the same proposition:

(3) You are instructed that it is provided in the contract sued on: 'Nor shall this association be liable in any manner to any member or beneficiary for any indemnity or benefit for accidental death, loss of limb, of sight, disability resulting wholly or partially, directly or indirectly, from any of the following causes, conditions or acts, or when the member is under the influence or affected by any such cause, condition or act, to wit: disease, bodily or mental infirmity. . . . Each of the foregoing causes, conditions or acts are expressly exempted from all the provisions of this by law granting to members or beneficiaries thereof benefits or indemnities.' You are instructed that, if at the time of the alleged injury, if you find an injury was received, the said Leo O. Vernon was in any manner affected by disease or bodily infirmity, then the plaintiff cannot recover and you should so find.    (4) You are instructed that, before the plaintiff in this cause can recover, you must find, by a preponderance of the evidence, that the death of said Leo O. Vernon, independently of all other causes, was the result of external, violent, and accidental means, and if you find that other causes contributed to his death besides said injury, if you find he did receive one, then in such event the plaintiff could not recover, and you should so find.    (5)    You are instructed that, if you find that the

death of Leo O. Vernon was caused directly or indirectly, wholly or in part, by disease or bodily infirmity afflicting Leo O. Vernon at the time of the alleged accident, if he did receive an injury, then you are instructed that the plaintiff could not recover, and you should so find. (6) You are instructed it is claimed by the defendant association the said Leo O. Vernon prior to and at the time of his death was affected by a disease, and that his death resulted from such disease. If you find that the said Leo O. Vernon, prior to and at the time of his death, was affected by disease, and such disease contributed to his death, then said death was not accidental within the meaning of these instructions, and the plaintiff cannot recover. (7) You are instructed that the contract sued on provides: 'Nor shall this association be liable in any manner to any member or beneficiary for any indemnity or benefit for accidental death . . . resulting wholly or partially, directly or indirectly, from any of the following causes, conditions or acts, or when the member is under the influence of or affected by any such condition or act, to wit, medical or surgical treatment.' If you find that the said Leo O. Vernon, deceased, did receive an injury in the manner alleged and stated in the petition of the plaintiff, yet if you further find that said injury was the result of medical or surgical treatment for the purpose of relieving the said Vernon from his then condition, then in that case the defendant would not be liable even if he did receive accidental injury. (9) You are instructed that if you find by a preponderance of the evidence that the sore or boil upon the left leg of Leo O. Vernon was open or incised by his attending physician, and that thereafter an infection set in by reason of such incision, then you are instructed this is not an accident for which the defendant herein would be liable, and you should so find.

In connection with those given, the following should also be considered:

(2) It appears from the record without controversy in this case that Leo O. Vernon became a member of the defendant association in the year 1905, and so continued, and was at the time of his death a member in good standing in said association; that the said Leo O. Vernon died near Bloomfield, Iowa, on the 30th day of July, 1909; and, if the plaintiff is entitled to recover in this case, the amount of her recovery will

be $5,000, with interest at 6 per cent. per annum from the 30th day of September, 1909. You will therefore accept these as facts established in the case. (3) The plaintiff in this case claims that the said Leo O. Vernon died, at the time herein-before stated, from an accidental injury produced by a bath attendant rubbing the left leg of the said Leo O. Vernon so hard as to cause an abrasion of the skin, and that from such injury septicæmia or blood poison set in, which was the sole and proximate cause of his death. On the other hand, the defendant in this case claims that the deceased, Leo O. Vernon, was afflicted with disease, and that his death was caused there-by, and that therefore his death was not from an accidental injury. . . . 'Proximate cause' is the primary and efficient cause, or the moving producing cause—that is, that but for such cause the death of Leo O. Vernon would not have occurred.

Complaint is made of the instructions given, and also of the refusal to give the ones asked, and the argument in support of these complaints is that the provisions with reference to benefits which we have quoted were not correctly interpreted by the trial court. The exact claim is that the court did not succinctly state to the jury that there could be no recovery unless plaintiff showed that the death of the assured resulted from injuries received through external, violent, and accidental means, independently of all other causes; and failed to instruct that if the death resulted wholly or in part, directly or indirectly, from medical or surgical treatment, there could be no recovery. We are of the opinion that the first proposition is fairly covered by the instructions given. The jury was told that plaintiff must show the "death was caused solely and proximately by accident"; and the term "proximate cause" was defined. Again the court charged that defendant was liable only in the event that death resulted solely and independently of all other causes from the alleged accident, and specifically charged that, if the death of Vernon resulted directly or indirectly from or in consequence of disease, there could be no recovery. The instructions, as it seems to us, cast the burden upon plaintiff of show-

ing that death was due solely to the accident and did not result either directly or indirectly from, or in consequence of, disease.

While what is known as article 6, section 6, of the contract is somewhat obscure, it would not do to hold that no recovery could be had on the certificate if the assured was afflicted with any disease or bodily or mental infirmity, either at the time he received his injuries or at the time of death. Very few persons are free from some form of disease or bodily infirmity, and if a condition of that kind, without reference to its causal connection with death, should be held a bar to recovery, the proposed insurance would be a delusion and a snare. Such conditions as we here find are to be construed most strongly against the insurer; and, taken together, we think they must be held to apply to such diseases or bodily or mental infirmity as in some manner contribute, directly or indirectly, either to the injury or to the death. Unless there be such contribution, then the death, loss of limb, etc., cannot result either wholly or partially, directly or indirectly, therefrom. In other words, the disease or bodily infirmity must be a cause or one of the causes of the injury or death, and it is not enough to defeat recovery to show either disease or bodily or mental infirmity. *Binder v. Association*, 127 Iowa, 25. For this reason the trial court did not err in the instructions given or in refusing to give the third instruction asked. The fourth, fifth, and sixth requests were sufficiently covered in the instructions given.

5. SAME: construction of contract.

There was testimony to the effect that, shortly after the assured arrived at Colfax early in the month of July, a boil or pimple about the size of a quarter was discovered upon his leg, and it also appears that an attending physician made an incision at this point in order to afford relief. The wound remained open after this incision, and it is claimed for defendant that this incised wound may have become infected and brought about the blood poisoning from which it is claimed the assured died.

It will be noticed that the provisions of the contract from which we have quoted except accidental death resulting wholly

6. SAME.

or in part, directly or indirectly, from medical or surgical treatment. The seventh request was made to direct the jury's attention to this particular provision, and it is claimed that the court erred in refusing to give it. To this there are two answers. The first is that no such defense is pleaded. An examination of the answer shows that no reference was made therein to this claimed defense.

Second, the instruction itself is fundamentally wrong in that it announces the rule of nonliability, even if the medical or surgical treatment was necessary, or thought to be necessary, for the purpose of relieving the assured from the results of an accidental injury. The provision of the bylaws quoted is somewhat obscure in its provisions regarding this matter, but we do not think it should be held that the association is not liable if the medical or surgical treatment was for the purpose of relieving the assured from the results of accidental injuries. It was undoubtedly enacted to cover cases of accident growing out of medical or surgical treatment, and should not be held to apply to such treatment which was necessitated because of an accidental injury. Either proposition is a sufficient answer to defendant's contention here.

The refusal to give the ninth request is a little more difficult to sustain. That has reference to what would be an acci-

7. SAME: refusal of instructions.

dental injury, and has reference to article 6, section 2, of the by-laws, rather than to article 6, section 6. It means nothing more than this: That if the insured, by reason of an operation performed upon him to relieve a sore or boil upon his leg, came to his death, then there was no accident within the meaning of the law. If it should be construed to cover the exception contained in article 6, section 6, then the court correctly refused it, for the reason that no such defense was pleaded. Giving to the instruction the only interpretation which we think it will properly bear,

we are inclined to the view that while it might well have been given, no prejudice resulted from the court's refusal to embody it in the charge. The court, after stating plaintiff's claim as set forth in instruction 3, from which we have already quoted, defined an accident as follows: "By 'accidental' is meant as the result of accident, happening by chance, unexpectedly taking place, not according to the usual course of things, or not as expected. An accident is an unexpected event which happens as by chance, which does not take place according to the usual course of things, an event which takes place without one's foresight and expectation; an undesigned, sudden, and unexpected event." And by the fifth, which we have hitherto set out, the burden was cast upon the plaintiff of showing that the claimed abrasion was an accident caused by a bath brush. The court also said in its charge that plaintiff was required to prove by a preponderance of the evidence that the death of Leo O. Vernon was caused proximately and solely by accident through external, violent, and accidental means. It is manifest that, if the jury had found there was no abrasion of the skin as claimed by plaintiff, it could not, under the instructions as given, have rendered a verdict for her. In other words, had it found that death was due to an incision made to afford relief from a sore or a boil, it would by the same mental process have determined that it was not due to the abrasion upon the leg, as claimed by plaintiff. This was the only claim of accident made by the plaintiff, and this, under the instructions, she was bound to show to justify a recovery.

III. In a reply filed by plaintiff, waiver of these conditions was pleaded because defendant knew, or should have known, of the condition of the assured's health when he was admitted to membership, and that it did in fact know, because of the reputation in the community. During the trial this division of the reply was withdrawn, and at three different times the jury's attention was directed to the matter of withdrawal. Notwithstanding this

8. INSTRUCTIONS: harmless error.

fact, when the court prepared its instructions, it óverlooked this withdrawal, and in stating the issues recited the substance of this division of the answer. When he came to read the instructions, he noticed this mistake, and did not read that part to the jury—intending, as he says, to remove that statement before sending the instructions to the jury. This, too, he failed to do, and the statement went to the jury room. After the verdict, plaintiff was permitted to show in support of the verdict that the jury did not read this part of the instruction, and did not hear the statement read. This testimony, if it were admissible, and we are inclined to think it was, removed any possible prejudice.

Aside from this, however, the error was nonprejudicial, even if read; for the jury was specifically directed in the main part of the charge to the exact issues they were to determine, and these made no reference whatever to that issue. Indeed, no reference was made thereto save in stating the issues made by the pleadings. Moreover, the jury was fully advised by counsel and through the remarks of the court that this issue was withdrawn. The thought of prejudice is distinctly negatived.

IV. There is testimony to support the verdict, and it is not for us to say that we would have arrived at a different conclusion.

Finding no prejudicial error, the judgment must be, and it is, *Affirmed*.