BEULAH DEWEY, Appellee, v. ABRAHAM LINCOLN LIFE INSURANCE COMPANY, Appellant.

No. 42636.

November 13, 1934.

Parrish, Cohen, Guthrie & Watters and J. L. Parrish, Jr., for appellant.

Ralph N. Lynch, for appellee.

Anderson, J.—This is an action on an accident insurance policy. On the 30th day of January, 1929, the defendant company issued an accident policy to R. L. Dewey, which policy was in full force and effect on the date of the death of the insured. The plaintiff in this action was the beneficiary named in the policy. Upon the trial of the case the jury returned a verdict in favor of the plaintiff. The defendant appeals.

The policy in suit provided for the payment to the beneficiary of $1,000 in the event that the insured should die from:

"Sec. (a). The effects resulting independently and exclusively of all other causes, from bodily injury sustained during the life of this policy, solely through external, violent, and accidental means or causes."

The sole question involved in this case is whether the death of the insured resulted from an accident as contemplated in the foregoing quoted provision. The record discloses that the insured, R. L. Dewey, was employed in the roundhouse of the Great Western Railroad Company in Des Moines, Iowa, as a boiler maker, and had been so employed for some time prior to February 2, 1933. On

February 2, 1933, at about 3:30 in the afternoon, while working upon an engine in the roundhouse of his employer, Dewey received in some manner a wound upon the left side of his head. There was a cut about an inch and one-half in length which bled very profusely and which later was swollen up to the size of a hen's egg and badly discolored. First aid was applied to the injury by one Albin, clerk of the Great Western Railroad Company. Dewey later went to his home and was taken by his wife to Dr. Coleman to have the injury attended to. Dewey returned to his work on February 3d and 4th, but on the 5th he went to bed and remained there until his death, which occurred on February 24, 1933. Dr. Coleman was called on February 6th, and continued in attendance upon Mr. Dewey until his death. The doctor testified that Mr. Dewey had no fever for four or five days; that she saw him every day after the accident and sometimes twice a day; that he (Dewey) complained of severe pains in his head, reaching down the side of his neck, and that his left arm was stiff. On the 9th his temperature started to rise, the bronchial tubes showed evidence of infection, bronchial pneumonia developed, from which he died on February 24th.

There is a conflict in the medical testimony as to the cause of the bronchial pneumonia; that is, as to whether or not it was caused or precipitated by the injury, the resulting shock due to the contusion and loss of blood, and the lowering of resistance of the patient, or whether the pneumonia was the natural result of a cold with which the patient had been previously afflicted. It appears that the general condition of Mr. Dewey's health was good. There is no history of chronic or recurring colds. Dewey worked seven days a week on his job, including Sundays and holidays. He was off work thirty-one days in the year previous to his injury. He had a cold in February a year prior to his injury and was away from his work twelve days at that time. He was away from his work two or three days in each of the months of July, August, October, November, and December of the year previous to his accident. Some of the time that he was off he was sick, but not always. There is testimony that the only way he had of getting off from work was to claim that he was sick. He was supposed to work every day of the week including Sunday the year around. There is no direct testimony that he was sick at any time during the preceding year except that he had a pleurisy pain a couple of days in August. There is testimony that he had a cold on two days just preceding

his accident, but that it was not severe enough to confine him to the house. There is medical testimony to the effect that an injury such as was suffered by Mr. Dewey, with the consequent loss of blood, would be a shock to the system, lowering the resistance, and also to the effect that exposure to cold is a well known precipitating cause of pneumonia, especially in connection with any shock to the system which would tend to lower the resistance. There is testimony to the effect that the temperature at the date of the accident, and the two following days, was about freezing, and Dewey was exposed to this temperature outside as well as in the roundhouse after his injury. And there is also medical testimony to the effect that, where there is a cold and sore throat followed by bronchial pneumonia, there is ordinarily some reason why the germs overcome the resistance and precipitate pneumonia; that this may be due to the lowered resistance following an accident or shock; that, if the system receives some shock of some character immediately before an exposure to cold, then the exposure would be more of a precipitating cause than otherwise. Any shock to the system disturbs the respiratory reflexes and causes germs which may be present in the throat to enter the bronchial tubes or lungs and cause infection or pneumonia. The attending physician testified that "usually when a person gets pneumonia there is some precipitating cause, as there was in this case," and that, in the opinion of this witness, "the injury that Mr. Dewey had received precipitated the pneumonia, and that without the blow or injury he would never have had pneumonia." Several other expert medical witnesses testified directly that Mr. Dewey's injury caused him to have bronchial pneumonia, and that the accident or injury was probably a precipitating cause rather than an accelerating cause; some of them testifying that in their opinion the accident was the sole cause of the bronchial pneumonia. It is true that some of the testimony of some of the expert witnesses called by the plaintiff was based in part upon a hypothetical question propounded to them which contained a statement in describing the injury and the result thereof to Mr. Dewey, that the blow on the head caused an unconscious condition. At the time the hypothetical questions were propounded, the records contained a statement from a witness Brennan that one Faust had told him of the accident, and that Mr. Dewey was "knocked out". This testimony was later withdrawn from the record by the court as being hearsay and not a part of the res gestæ. However, medical testimony we

have quoted was elicited from the physicians in their examination other than their answers to the hypothetical questions. One of the experts, Dr. Fagen, was asked the same hypothetical question with the element of unconsciousness omitted and he gave it as his opinion that the accident was probably the cause of the pneumonia which later caused the death of Mr. Dewey. Several other medical witnesses had been in attendance and treated Mr. Dewey during his last sickness, and much of their testimony is based upon information they received in this manner. The testimony of the plaintiff's medical experts was disputed by the testimony of Dr. Price, who was called by the defendant. But this witness testified that one with a lowered resistance due to any cause is more apt to have bronchial pneumonia than otherwise, and that, if a man has a cold, he is more susceptible to pneumonia than if he is not thus afflicted; that exposure to cold or a low temperature is not recognized as a predisposing factor to the pneumonia, unless there is in addition thereto a lowered resistance. It thus appears that there was a fair controversy in the record as to whether or not the injury which Mr. Dewey suffered was the precipitating or proximate cause producing the pneumonia from which Mr. Dewey died.

 The appellant claims error in the introduction of the element of unconsciousness following Mr. Dewey's injury which was included in the hypothetical question asked of the plaintiff's medical witnesses, and contends that, by reason of this matter getting into the record, the defendant was denied a fair and impartial trial; that, even though such testimony was withdrawn from the record and from the consideration of the jury, its withdrawal did not and could not prevent the jury from considering such evidence. After the introduction of all of the evidence, and the close of the case, this testimony was withdrawn from the jury on the motion of the defendant, as well as the testimony of the witness Brennan, and the jury were advised that all such testimony was withdrawn, and that they should not consider the same in their final deliberations upon the case. The court in its instructions 8 and 9 given to the jury said:

"Instruction #8. You are hereby instructed that the testimony of John F. Brennan as to his conversation with William Faust as to how the accident to R. L. Dewey occurred has been stricken from the record and in your consideration of this case you are to absolutely disregard any and all testimony on this subject."
"Instruction #9. You are hereby instructed that the testimony of

Doctor James, Doctor Jennie Coleman, Doctor Dawson, and Doctor Watters, in connection with hypothetical questions based upon facts derived from the testimony of John F. Brennan as to the manner in which the accident to R. L. Dewey occurred has been stricken from the record and you are to absolutely disregard all such evidence in your consideration of this case."

As to whether the court was right in withdrawing the testimony referred to, we are not now concerned. The plaintiff appears to have acceded to such withdrawal. We are not prepared to say that the introduction of the testimony referred to and its subsequent withdrawal created such a prejudicial situation as would warrant the granting of a new trial or a reversal of the case in this court. As we have indicated, the jury was explicitly admonished and instructed to absolutely disregard any and all such testimony. No motion for a continuance on account of this alleged prejudicial error was made. We do not feel that any prejudicial error resulted from the rulings complained of.

██ It is contended that there is no evidence as to the manner in which Mr. Dewey received his injury, or that it was through or by accidental means. There can be no question, under this record, but what he was injured in some manner while engaged in his work in the roundhouse of the railroad company.

It is the settled law of this state that where death results from an external visible injury, a presumption arises that such injury was not intentionally inflicted, and this presumption is available as affirmative evidence in a suit on an accident or life insurance policy. This rule was recently restated in the case of Martin v. Bankers Life Co., 216 Iowa 1022, 250 N. W. 220, in which we said:

"In addition to this evidence, there is the presumption that the wound was not intentionally inflicted, and from this the inference can be drawn that it was caused by accidental means."

In Caldwell v. Iowa State Traveling Men's Association, 156 Iowa 327, 136 N. W. 678, we said:

"It has been repeatedly held that, in the absence of direct evidence on the subject, a presumption arises that the wound was not intentionally inflicted either by the assured or by another. This presumption is almost the equivalent of a presumption that the wound was inflicted through accidental means."

In the Martin v. Bankers Life Co. case, supra, the policy in suit contained practically the same provision as the policy in the case at bar. The facts in that case show that the insured received a slight injury to the back of his hand on April 28, 1930, which apparently healed, and that about June 11th following, after an operation for appendicitis and a further exploratory operation, it was determined that the insured was suffering from what is known as "Welch" or "Barnyard" bacillus infection, and that he later died from such infection. There was medical testimony in that case that such infection probably resulted from the injury to the hand, and there was other expert medical evidence to the effect that it could not thus result. In that case we permitted a judgment against the insurance company to stand, and used this language:

"Obviously, it is not the function of the court to pass upon the correctness of the theory of either of these two sets of expert witnesses. The function of the court is to decide whether the evidence is sufficient to make a case for the jury." In the Martin case the medical testimony was in conflict, as it is in the case at bar.

In Delaney v. Modern Accident Club, 121 Iowa 528, 97 N. W. 91, 63 L. R. A. 603, we have a case in which the record discloses a slight injury or cut on the little finger of one Delaney that later resulted in erysipelas, causing Delaney's death, and the question argued in that case was as to whether the death was solely due to the cut on the finger, or whether it was due to erysipelas and the consequent blood poisoning, as an independent cause. The expert medical testimony was in conflict, as it is in the case at bar, and we there said:

"The simple question is whether the death of Delaney resulted, through natural causes, without the interposition of a new and independent cause, from the cut on his finger. Disease brought about as the result of a wound, even though not the necessary or probable result, yet if it is the natural result of the wound, and not of an independent cause, is properly attributed to the wound; and death resulting from the disease is a death resulting from the wound, even though the wound was not, in its nature, mortal or even dangerous. Even though the wound results in disease and death through the negligence of the injured person in failing to take ordinary and reasonable precautions to avoid the possible consequences, the death is the result of the wound. There is really no conflict in the authori-

ties on this question, and it is only necessary to cite a few pertinent cases."

In Freeman v. Mercantile Mutual Assn., 156 Mass. 351, 30 N. E. 1013, 17 L. R. A. 753, the court had under consideration the question we here have before us and used this language:

"The law does not consider the cause or causes beyond seeking the efficient, predominant cause, which, following it no further than those consequences that might have been anticipated as not unlikely to result from it, has produced the effect. An injury which might naturally produce death in a person of a certain temperament or state of health is the cause of his death, if he dies by reason of it, even if he would not have died if his temperament or previous health had been different; and this is so as well when death comes through the medium of a disease directly induced by the injury as when the injury immediately interrupts the vital processes." To the same effect, see Martin v. Equitable Association, 61 Hun 467, 16 N. Y. S. 279; Bacon v. United States Mutual Association, 123 N. Y. 304, 25 N. E. 399, 9 L. R. A. 617, 20 Am. St. Rep. 748; National Benefit Assn. v. Grauman, 107 Ind. 288, 7 N. E. 233.

In the case of Carpenter v Iowa State Traveling Men's Association, 213 Iowa 1001, 240 N. W. 639, we had under consideration a case involving an action upon an accident insurance policy, and we there reiterated and reannounced the rule here under discussion, and in that case we quoted with approval the following extract from the case of Kladivo v. Melberg, 210 Iowa 306, 227 N. W. 833:

"Plaintiff is entitled to the benefit of that interpretation of his evidence and of all inferences therefrom, if reasonable, most favorable to his case, and, if reasonable minds may differ as to the conclusions to be drawn from the evidence, he is, if any of such conclusions would sustain right of recovery, entitled to go to the jury. The court should not without compelling reason deprive the plaintiff of the right to have the jury pass upon his case."

The law seems to be well settled in this as well as in other jurisdictions that, if accident results in disease and death follows, accident is still the proximate cause of the death. Vernon v. I. S. T. M. A., 158 Iowa 597, 138 N. W. 696; Caldwell v. I. S. T. M. A., 156 Iowa 327, 136 N. W. 678; Foster v. North American Accident Insurance Co., 176 Iowa 399, 158 N. W. 401; Druhl v. Equitable

Life, 56 N. D. 517, 218 N. W. 220, 60 A. L. R. 962; United States F. & G. Co. v. Hood, 124 Miss. 548, 87 So. 115, 15 A. L. R. 605; Christ v. Pacific Mutual Life Co., 312 Ill. 525, 144 N. E. 161, 35 A. L. R. 730.

In the instant case the jury could have found from the record that Mr. Dewey was afflicted with a common cold which was but a temporary ailment, and that the injury which caused a shock to his system with a consequent lowered resistance was the proximate cause of the pneumonia which caused his death.

The questions involved were fully and fairly submitted to the jury under the instructions of the trial court. The jury answered the fact questions, properly submitted to it, against the contentions of the defendant-appellant, and returned its verdict for the plaintiff. We find no reason for disturbing such finding. An affirmance follows.—Affirmed.

MITCHELL, C. J., and STEVENS, KINTZINGER, and CLAUSSEN, JJ., concur.