**ORDER OF RAILWAY CONDUCTORS OF AMERICA v. GREGORY.**

No. 1517.

Court of Civil Appeals of Texas. Eastland.

Feb. 14, 1936.

Rehearing Denied March 13, 1936.

E. H. Crenshaw, Jr., of Kingsville, and John C. North, of Corpus Christi, for appellant.

Jones & Kirkham, of Corpus Christi, for appellee.

GRISSOM, Justice.

Appellee sued appellant upon an accident insurance policy issued to her deceased husband, which provided for payment to her, as beneficiary, of $2,500 in the event of accidental death of the insured under certain circumstances. The trial resulted in a judgment for appellee for $2,800, which was the face value of the policy, plus $300 attorney's fees.

The jury found (1) that about February 5, 1934, the insured sustained an injury by means of a fall from a locomotive; (2) that such injury left visible marks upon the body; (3) that the death of the insured was the result of said injury independently of all other causes; and (4) that $300 was a reasonable fee for appellee's attorneys.

Appellant, in its brief, presents the following propositions:

(1) "The court erred in rendering judgment for the plaintiff and in not rendering judgment for the defendant for the reason that it conclusively appeared that the death of plaintiff's husband was caused by infection, and this was not introduced into the body of said husband by or through an open wound which open wound was caused by external, violent and accidental means and which was visible to the naked eye."

(2) "The court erred in rendering judgment for the plaintiff and in not rendering judgment for the defendant for the reason that it conclusively appeared that the death of plaintiff's husband was caused either

partially or entirely by disease, which was an exception to the coverage of the insurance policy issued by defendant."

Article 20 of appellant's by-laws provided: (a) "The department shall not be liable in case of injury, fatal or otherwise, resulting from any poison or infection unless the infection is introduced into or by and through an open wound, which open wound must be caused by external, violent and accidental means and be visible to the naked eye. * * *"

Under the first proposition and exemption (a) appellant says that the medical testimony of appellee was that insured's death "was caused by peritonitis; that this was due to the fact that when Gregory fell the force of his body caused a squeezing and bruising of the intestines and the organs of the abdomen; that this caused a rupture of the capillaries or smallest blood vessels and caused several hemorrhages, and as a result of this, peritonitis developed." It quotes appellee's witness Dr. Thayer as saying in effect that in his opinion the sole and only cause of death was "the blow which was received on the side of the abdomen or stomach."

Appellant further says: "All of plaintiff's testimony was to the effect that the injury and pain suffered by Gregory were due to the blow and the bruising caused thereby. None of the testimony showed there was any open wound through which the infection was or could be introduced."

Appellant then argues that under the foregoing quoted exception from liability (a) appellant is not liable where death was caused by infection, which infection was not introduced into the body by or through an open wound. The quoted provision plainly provides that appellant shall not be liable in case of fatal injury resulting from infection, unless the infection is introduced through an open wound, etc. In making this contention, appellant must necessarily assume that the established cause of the death was infection as that word is used in the by-laws and as applicable to the facts of the case.

Under the second proposition appellant sets out the following provisions of its by-laws:

(b) "This department shall not be liable in case of injuries fatal or otherwise, inflicted by a member, in good standing, on himself, while sane or insane, or injuries of which there are no visible marks upon the body. (The body itself not being deemed such a mark in case of death,) or in case of injury, happening to a member while in any degree under the influence of intoxicating liquor or narcotics; or by reason of and in consequence of the use thereof, or for death, loss of either hand, arm, foot, leg, sight of either eye, or disability when caused wholly or in part by disease, fighting, duelling, wrestling, or in acting as an aviator or balloonist."

(c) "Whenever a member in good standing shall, through external, violent and accidental means, receive bodily injuries which shall, independently of all other causes, result within six months from the date of said accident, in the death of the member, the beneficiary named in the certificate shall be paid as follows:" etc.

Under this proposition and exemption from liability (b) it is contended that the evidence shows conclusively that insured's death was "caused wholly or in part by disease," and that therefore the exception above quoted is applicable and appellant is not liable under its policy and by-laws.

Much dispute is found in the testimony; however, we deem the evidence sufficient to authorize the conclusion that about 19 days before insured's death he fell from a locomotive engine onto the cross-ties and suffered an injury to his stomach which caused his death. There was ample evidence that at the time of his injury he was a strong, healthy man. With reference to the cause of the insured's death, Dr. Thayer testified that "the sole and moving cause of death under such circumstances would be the blow received on the side of the abdomen or stomach which was sufficient to bruise the tissues and scratch or scrape or abrase the skin; that these things would be enough for the following steps which resulted in death; that a blow of this nature would cause peritonitis, providing the blow was severe enough to hurt any of the organs inside, such as the intestine * * * that based on the hypothetical question he could think of no other possible cause of death."

Was it intended for the "infection" clause to apply to external violence that produced internal injuries and which resulted in internal infection? Does it apply to a case where bacteria is caused to operate internally by reason of a violent external injury leaving its mark upon the exterior of the body? What was the cause of Gregory's death? Was it the fall, or was it infection or disease? The quoted provi-

sion (c) of the by-laws provides for compensation for external accidental injuries which, independently of all other causes, result within six months in death. It is difficult to imagine a death six months after such an injury in which infection or disease had not set up as a result of the injury and finally produced death. We do not believe with this provision in the policy that it was intended to provide for compensation only for death resulting immediately from a violent external injury (before disease or infection had time to develop), nor that it was meant to exclude death resulting within the period from disease or infection produced solely by such injury.

Under like situations the courts have adopted the ordinary meaning of words and terms as they are commonly understood by the average laymen in preference to a technical meaning as understood by members of a profession or by a lexicographer. In the very interesting case of International Travelers' Ass'n v. Francis, 119 Tex. 1, 23 S.W.(2d) 282, 286, Chief Justice Cureton, in considering whether the death of Francis, which was occasioned by the extraction of a tooth resulting in an infection producing Ludwig's angina, was an accidental death, quoted the following with approval:

"But our point of view in fixing the meaning of this contract must not be that of the scientist. It must be that of the average man."

"The words employed in a contract of insurance are to be taken and understood in their plain, ordinary, usual and popular sense, rather than according to the meaning given them by lexicographers, or persons skilled in the niceties of language. * * *" 32 C.J. pp. 1150, 1151, § 261.

"The rule is practically universal that, when the language of an accident policy is susceptible of different constructions, that one must be adopted which is most beneficial to the insured." Continental Cas. Co. v. Colvin, 77 Kan. 561, 95 P. 565, 568.

Appellee contends, correctly we think, that the "ordinary conception of the word 'infection' to a layman implies the invasion of bacteria from the air into an opening or abrasion on the surface of the skin or body causing toxic or blood poisoning." We find that the courts have adopted this ordinary meaning or understanding of the word.

"Whatever medical understanding of the word 'infection' may be, laymen's understanding of word is that it is caused by any noxious substance inserted into the flesh, whether substance be germ or poison. Dickey v. Western Tablet Co., 218 Mo.App. 253, 267 S.W. 431, 433." 4 Words and Phrases, Third Series, p. 266.

In the case of Continental Cas. Co. v. Colvin, supra, the policy provided: "Where the loss is occasioned or contributed to in any way by * * * infection; then * * * the amount payable shall be one-fourth of the amount which otherwise would be payable under this policy." There the insured fell, bruising his chest. A few days later he became sick, an operation was performed, and pus was found in the chest. Soon afterwards he died. The jury found, in substance, that the fall was the cause of his death, that infection did not occasion or contribute to his death. The court said: "The jury evidently believed that the word 'infection' as used in the policy was not intended to apply to the condition of the insured. The evidence of Dr. Axtell fully sustains this conclusion. It must be assumed, therefore, that the word 'infection,' as used in this policy, applies to external and not internal injuries."

A doctor testified that "the word 'infection' was not ordinarily used to describe such a condition, and it was not a good word to use for internal injuries, as it refers to bacteria, and is used with reference to the external injuries which become infected from the air." The testimony of Dr. Thayer and the finding of the jury is to the same effect in the present case.

The policy in the instant case provides: "This department shall not be liable in case of injuries, fatal or otherwise * * * of which there are no visible marks upon the body." Appellee contends that the "infection" clause covers only external, as distinguished from internal, infection, and that it was so intended by appellant. Appellee says that, if this contention is not correct, "then any injury which in turn produces internal infection of some character is not a compensable accident because there is no showing that the infection was introduced into or by and through an open wound." Under the facts of this case, and considering all applicable provisions, we are of the opinion the so-called "infection" clause was not intended to operate or apply to the present facts as found by the jury. On the contrary, we think the "infection" clause was intended to and does apply to bacteria entering the surface of the body, and not to

cases like the present one, where infection or disease is caused to operate internally as a result of an external injury. Under the facts as found by the jury, Gregory's death was caused by his accidental fall upon the railway ties, and was not caused by infection or disease. It may be conceded that peritonitis in its technical or medical sense may be an infection, but, as heretofore stated, we are to consider the word as it is used and understood by a layman.

■ We are also in accord with appellee's second counter proposition to appellant's first proposition, which counter proposition reads as follows: "Under an accident insurance policy providing that the insurer shall not be liable for injuries, fatal or otherwise, resulting from any poison or infection unless introduced into or by and through an open wound, a death resulting from a fall onto a railroad tie, leaving a visible mark upon the body and causing peritonitis to set in, which is the immediate cause of death, is within the policy of accidental death, permitting recovery because the death is the result of an accidental injury and is not the result of infection; the infection being merely a link in the chain of causation."

Insured was in good health, and had passed a physical examination for life insurance shortly before the accident. The fall onto the cross-ties injured and bruised the organs of the stomach, causing peritonitis to set in; the toxic poisoning thus resulting was absorbed into Gregory's system and caused his death. Without the injury to the organs of the stomach caused by the fall there would have been no peritonitis and no death. In other words, the evidence authorizes the conclusion that insured's death was caused by the fall and not by infection or disease; the infection or disease being but a mere link in the chain of causation. The infection or disease is the result of the injury and the medium through which the injury acted in producing death.

In the case of Hanley v. Occidental Life Ins. Co., 164 Wash. 320, 2 P.(2d) 636, 637, the policy protected against loss resulting directly, exclusively, and independently of all other causes from bodily injuries sustained "solely through external, violent and accidental means; * * * loss resulting, in whole or in part, from peritonitis, * * * carbuncles, * * * infection * * * is hereby classified as resulting from sickness, the original cause of such loss or of the ailment causing the loss notwith-

standing, and indemnity shall be payable for such loss only as provided" (for sickness). Hanley fell and injured his leg. His leg was lanced, and he became violently ill, and after the operation died of septic pneumonia. There was testimony that septic pneumonia was caused by the original injury, and that the infection had traveled from his leg to his lungs. In affirming judgment for the plaintiff, the court quoted with approval from the case of White v. Standard Life & Accident Ins. Co., 95 Minn. 77, 103 N.W. 735, 736, 884, 5 Ann.Cas. 83, as follows: "If the injury be the proximate cause of death, the company is liable. * * * If * * * the injury be the cause of the infirmity or disease—if the disease results and springs from the injury— the company is liable."

The court quoted from Western Commercial Travelers' Ass'n v. Smith (C.C.A.) 85 F. 401, 404, 40 L.R.A. 653, as follows: "If the death was caused by a disease which was not the result of any bodily infirmity or disease in existence at the time of the accident, but which was itself caused by the external, violent, and accidental means which produced the bodily injury, the association was equally liable to pay the indemnity. In such a case, the disease is an effect of the accident, the incidental means produced and used by the original moving cause to bring about its fatal effect, a mere link in the chain of causation between the accident and the death, and the death is attributable, not to the disease, but to the causa causans, to the accident alone."

Causa causans, " * * * the real effective cause of the damage. * * *" 36 C.J. p. 35.

In the Hanley Case, supra, as in the instant case, the infection sprang from the injury, and the death was the result of the fall—not the result of infection or disease. The causa causans was the fall, and the infection or disease but a link in the chain of causation.

In the case of Cary v. Preferred Accident Ins. Co., 127 Wis. 67, 106 N.W. 1055, 5 L. R.A.(N.S.) 926, 115 Am.St.Rep. 997, 7 Ann. Cas. 484, the policy provided: "(1) This insurance does not cover * * * any case of disability or death whatever, except where * * * such disability or death resulted proximately and solely from accidental causes; (2) nor injury, fatal or nonfatal, resulting from any poison or infection * * *; (3) Nor death * * * nor disability resulting either directly or in-

directly, wholly or in part, from * * * bodily infirmity or disease of any kind."

Cary fell and the skin on his leg was broken. He died of septicemia, or blood poisoning, resulting from the introduction of bacteria into his body through this wound. The jury found as follows: "(5) Did the death of Eugene Cary result proximately and solely from bodily injury caused by external, violent and accidental means? A. Yes. (7) Was the immediate cause of the death of Eugene Cary infection from bacteria producing the septicemia aforesaid? A. Yes." The court said:

"The policy exempted the defendant from any liability for any injury 'resulting from any poison or infection. * * *' Exemption from liability is claimed under this provision, under the jury's finding that 'the immediate cause of the death of Eugene Cary (was) infection from bacteria producing the septicæmia.' This provision of the policy exempts defendant from liability in case Mr. Cary's death was caused by poison or infection. Nothing further need be said to refute the idea that bacterial infection proximately caused his death under the terms of the policy. This provision of the policy is an exemption from liability only where the resultant injury was proximately caused in the manner specified in the provision. We have shown that the infection which produced the septicemia, which the jury found was the 'immediate cause' of death, cannot be held to be its proximate cause, and therefore it does not come within the terms of this exemption. * * *

"The exemption manifestly cannot apply to this bodily infirmity or disease, the result of the accident; for, if it were treated as within the exemption, then it would be difficult to conceive of liability under any circumstances under insurance against effects of bodily injury caused solely by external, violent, and accidental means."

Standard Acc. Ins. Co. v. Rossi, 35 F.(2d) 667, 672 (C.C.A.): "When an accident causes a diseased condition, which, together with the accident, results in injury or death complained of, the accident alone is to be considered as the cause of the injury or death."

In the case of Merkel v. Railway Mail Ass'n, 212 Mo.App. 632, 254 S.W. 368, the policy provided that no recovery was allowed for appendicitis, traumatic or otherwise. Peritonitis was caused by a blow, and the peritonitis caused a perforation of the appendix. Under a finding of such fact, a recovery on the policy was affirmed.

In the case of Ludwig v. Preferred Acc. Ins. Co., 113 Minn. 510, 130 N.W. 5, the policy provided for recovery when death resulted directly, independently, and exclusively of any and all other causes from bodily injuries effected solely through external, violent, and accidental means. Insured died from a blow which caused septic peritonitis. Recovery was allowed under the policy.

In the case of Delaney v. Modern Accident Club, 121 Iowa, 528, 97 N.W. 91, 93, 63 L.R.A. 603, the policy provided that death must result solely from accidental means. Delaney's finger was cut by a steel eraser while in a friendly scuffle. Erysipelas and blood poisoning resulted from this minor cut, causing his death. The court said: "Disease brought about as the result of a wound, even though not the necessary or probable result, yet if it is the natural result of the wound, and not of an independent cause, is properly attributed to the wound; and death resulting from the disease is a death resulting from the wound, even though the wound was not, in its nature, mortal or even dangerous."

In Dewey v. Abraham Lincoln Life Ins. Co., 218 Iowa, 1220, 257 N.W. 308, 311, decided in November, 1934, it was said: "The law seems to be well settled in this as well as in other jurisdictions that, if accident results in disease and death follows, accident is still the proximate cause of the death."

This is the law in appellant's home state.

Travelers' Ins. Co. v. Hunter, 30 Tex.Civ. App. 489, 70 S.W. 798 (writ refused): The policy provided for compensation for " 'external, violent, and accidental means, which shall, independently of all other causes, immediately and wholly disable him' "; that it "shall not cover injuries of which there is no visible mark on the body * * * nor death * * * resulting wholly or partly, directly or indirectly * * * from disease."

Hunter fell and wrenched his arm and shoulder. His condition grew worse and rheumatism developed and he died of that disease, with the complication of heart trouble. The court said: "If the rheumatism which produced the death of Hunter was not caused by an accidental injury, then the company is not liable; but if such rheumatism was caused by the accidental injury,

and was but a mere link in the chain of causation between the accident and death, then the death is attributable, not to the disease, but to the accident alone."

International Travelers' Ass'n v. Dixon (Tex.Civ.App.) 283 S.W. 681, 682 (writ refused): "The policy provided 'against loss resulting from bodily injuries effected directly, independently, and exclusively of all other causes through accidental means.'"

The plaintiff fell and ruptured a blood vessel, causing paralysis. There was testimony to the effect that the paralysis was the result of trauma occasioned by the fall. "The correct interpretation and meaning of the stipulation contained in the policy is that the association will be liable in case the purely accidental means solely produced the injury at the very time it occurred (which injury in this case was the rupture of a blood vessel), even though pre-existing bodily infirmity (which in ·this case was hardened arteries) rendered the insured more susceptible to bodily injuries than he otherwise would have been. Otherwise the policy would apply only to a person in perfectly sound body and health, and such intention is not evident from the face of the contract. Pledger v. Business Men's Accident Ass'n (Tex.Com.App.) 228 S.W. 110; Fidelity & Casualty Co. v. Meyer, 106 Ark. 91, 152 S. W. 995, 44 L.R.A.(N.S.) 493; Penn v. Standard Life & Accidental Ins. Co., 158 N.C. 29, 73 S.E. 99, 42 L.R.A.(N.S.) 593; Bohaker v. Travelers' Ins. Co., 215 Mass. 32, 102 N.E. 342, 46 L.R.A.(N.S.) 543."

Western Indemnity Co. v. MacKechnie (Tex.Civ.App.) 185 S.W. 615, 616 (writ refused): The policy provided for "bodily injuries * * * effected directly and independently of all other causes through accidental means." The plaintiff fell while trying to catch a street car and broke a ·blood vessel, causing paralysis. The court said: "If the injuries alone caused the apoplexy and paralysis the appellants are liable."

See, also, 24 Tex.Jur. § 235, pp. 1031-1033; Bankers' Health & Acc. Co. of America v. Shadden, 15 S.W.(2d) 704, by this court; Preferred Acc. Ins. Co. v. Patterson (C.C.A.) 213 F. 595; Vernon v. Iowa State Traveling Men's Ass'n, 158 Iowa, 597, 138 N.W. 696; Moon v. Order of United Commercial Travelers, 96 Neb. 65, 146 N.W. 1037, 52 L.R.A.(N.S.) 1203, Ann.Cas.1916B, 222; Freeman v. Mercantile . Mut. Acc.

Ass'n, 156 Mass. 351, 30 N.E. 1013, 17 L.R. A. 753.

In accordance with the foregoing authorities and the finding of the jury that the accidental fall of Gregory caused his death independently of all other causes, we affirm the judgment of the district court.